Stafford *vs.* Mercer *et al.*

ROBERT STAFFORD, plaintiff in error, *vs.* HUGH W. MERCER *et al.*, defendants in error.

1. The seizing of cotton and provisions on Cumberland Island, on the Georgia coast, by the military authorities of the Confederate States, during the late civil war, to prevent the same from falling into the possession of approaching United States forces, was an act of war, and the individuals engaged in moving the same and transporting them to a place of safety within the Confederate lines, are not liable as trespassers to the owners of the property.

2. An action of trespass *vi et armis* will not lie against the clerk of a warehouse-man, who, on the lawful receipt of goods in store for another, sells them on the advice of his employer, but without the consent of, or authority from, the owner.

Capture of Private Property by Confederate States officers. Trespass. Before Judge SCHLEY. Chatham Superior Court. July, 1870.

Stafford brought trespass, *vi et armis*, against Mercer and Gue for the taking from his plantation certain cotton, corn and fodder, on January 2d, 1862. The defenses were the general issue, and that Mercer was a General, in the service of the Confederate States of America, at war with the United States of America; was ordered by his superior officers to take corn and fodder, for the use of the troops under his command, and to remove all property which might fall into the enemy's hands to a place of safety, and, pursuant to this order, had said cotton, which was on Cumberland Island, subject to capture by the United States forces, taken to Savannah, Georgia, as a place of safety, and stored, for Stafford, with Stafford's usual factor, whose clerk was said Gue. All which he claimed he had a right to do, under the laws of war; and that defendants were protected from any recovery, also, by an Act of the General Assembly of Georgia, approved 15th February, 1866, for the relief of Confederate States soldiers, for acts done under orders of their superiors. The taking, by certain Confederate officers, the value of the property, etc., was shown, by Stafford. For the defense, it

Stafford *vs.* Mercer *et al.*

was shown that the taking was under and pursuant to orders from General Mercer; that it was necessary for the exigencies of the service, and to keep it out of the hands of the enemy; that the usual receipts were given therefor, and that the cotton was stored with plaintiff's usual factor, at Savannah, where he was notified that it would be left. It further appeared that this factor was absent, in the service; that Gue was his agent and clerk, and that Gue, after consulting the factor and the military authorities, sold it, because Savannah was threatened by United States forces, and placed the Confederate money gotten for it to plaintiff's credit, but that plaintiff got no notice of this sale, etc., communication with him being cut off till the end of the war. Plaintiff got nothing for any of said produce; he refused, at the time of seizure, to receive the usual government price for his corn and fodder.

The evidence being closed, the Court charged the jury as follows:

1. If the jury find from the evidence that the plaintiff consented to the removal of the property in question, then there was no trespass, and he cannot recover.

2. If there was a state of war existing between the United States and the Confederate States in 1862, when the property in question was taken and removed, and if General Mercer was an officer in the Confederate army, and as such officer ordered the removal and taking of said property by the command of a superior or higher officer of the Confederate States, as an act of war, then Mercer is protected, and is not a trespasser, and is not liable to respond in damages.

3. If the defendant Gue received the cotton as the clerk of John W. Anderson, who was the ordinary factor of Stafford, the plaintiff, (even though he knew the circumstances under which it was taken and removed,) still he is not liable as a trespasser in that event. If any one is liable under that state of facts it is John W. Anderson, the principal, and not Gue, the clerk and agent.

Counsel for plaintiff then requested the Court to give the following charges:

1. That any unlawful interference with the private property of a citizen by another is a trespass, and for such the law gives damages. (The Court so charged).

2. In trespass all are principals, there are no accessories. And each is liable for the full amount of the damages accruing by virtue of the trespass; and to constitute one a trespasser it is not necessary that he should have done the act complained of personally, but all who are in any way aiding, assisting, advising, commanding or countenancing it, are responsible as principals, as well as those who perpetrate the act. (The Court so charged).

3. The Act of the Georgia Legislature, of February, 1866, for the relief of *bona fide* Confederate soldiers, which has been pleaded in this case by defendants is not law, was not when the plea was filed, the said Act being repugnant to the Constitution of the United States and the Constitution of Georgia, and that the jury cannot take said Act into the consideration of this case as law. The Court refused to give said charge, and stated that he would not charge upon the constitutionality of the Act of 1866, saying the second head of his charge would cover the case, and it was unnecessary to notice said Act. And, at this stage, the Court, (after refusing to charge as requested, and giving the intimation that the charge was unnecessary,) let the defendant's counsel strike the plea of defense under the said Statute of 1866, after the same had been argued upon to the jury and Court, both by counsel for plaintiff and defendants.

4. That the attempt on the part of the State of Georgia to withdraw from the Union was illegal, that the organization of the Confederate States into a Confederacy in hostility to the United States Government was illegal; that the laws passed by the State of Georgia, and those enacted by the Southern Confederacy, from the date of secession up to the termination of the late war were illegal and void. And if

Stafford *vs.* Mercer *et al.*

the defendants did (by virtue of any of the above mentioned laws) any act to the plaintiff's property, which, under the Constitution of the United States and the laws pursuant thereto, amounted to a trespass, such authority being derived from an illegal power, and one in hostility to the government to which plaintiff owed allegiance, cannot justify the act and protect the defendants. That any order or command emanating from either the civil or military authorities of the Confederate States, commanding the defendants to do that which in the eye of the law is a trespass, will not protect them if they did the act. (The Court refused so to charge.)

If the taking of the plaintiff's property by these defendants was a trespass under the Constitution and laws of the United States, it makes no difference whether defendants took it by command of a superior officer or of their own accord. In either case they are trespassers, and the jury are bound so to find. (The Court refused so to charge.)

6. If the jury believe from the facts of this case as disclosed by the evidence, that General Mercer issued the order as an officer of the Confederate States army, by virtue of which plaintiff's property was seized, without the consent of plaintiff, and without any compensation at the time of seizure, and further, if they find that F. L. Gue received the cotton and produce thus seized, knowing the circumstances under which it was taken and that the same belonged to plaintiff, or if Gue sold the same without any order from plaintiff, then, in law, both Mercer and Gue are trespassers, and the jury must so find. (The Court refused so to charge.)

The jury found for the defendants. A new trial was moved for, upon the grounds, that the verdict was contrary to law, etc., and that the Court erred in charging as he did, in refusing to charge as requested, and in allowing said plea of the Act of 1866 stricken, as aforesaid. The Court refused a new trial, and error is assigned on each of said grounds.

ANDREW SLOAN, for plaintiff in error. The second charge was error: 1 Bay. R., 15; 1 Baldw. R., 571; 1 Swift's Dig., 187; 2 Leigh's N. P., 1443; 7 Comyn's Dig., 515; Arch. N. P., 302, 354. Gue receiving the cotton, knowing the facts, was trespasser: 37 Ga. R., 277; 3d, 31; 12th, 614; 11 John. R., 285; 12th, 408; Old Code, secs. 2204, 2205, 4908, 5054; R. Code, sec. 2962. Regard for private property: 3 Wal. S. C. R., 9, 10. Fifth request to charge was right: 37 Ga. R., 515, 532; 9 Wal. S. C. R., 197; 4 Am. L. Reg., 95. Command of superior does not justify defendants: 11 John. R., 285; 12th, 408; 14th, 119; 3 Cranch R., (Cond.,) 552; 13 How. R., (Cond.,) 421; 1 Black's C. C. R., 549; 2 Cranch's C. C. R., 117; 1 Cowper, 180. Confederate States war a rebellion: 4 Am. L. Reg., 95; 9 Wal. 197.

T. E. LOYD; HARTRIDGE & CHISOLM, for defendants.

McCAY, J.

1. We do not think that the legality of the Confederate Government, or even the validity of its civil laws, *pro tempore*, as the acts of a government *de facto*, arises, under the facts disclosed by this record. The seizure of this cotton was not pretended to be done by virtue of any laws of the Confederate Government, nor was it seized by a civil officer, or by virtue of any civil process. It was done, avowedly, as an act of war, by a regularly organized military force, and by virtue of military orders. It was done, avowedly and actually, to prevent the cotton from falling into the hands of the United States forces, and, as we suppose, it was only seized and transported to Savannah, rather than destroyed, in mercy to the owner, and because the purpose to be attained, could, under the circumstances, be as well attained that way as by its destruction.

The real questions, therefore, are: 1st. Was the seizure of this cotton a belligerent act, an act of war, legitimately, ac-

Stafford *vs.* Mercer *et al.*

cording to the practice of civilized nations? 2d. Admitting it to be such an act, is General Mercer personally responsible for it as a trespass?

It will be found impossible to lay down any precise rule as to how far it is legitimate to interfere with private property in the prosecution of a war. The general rule undoubtedly is, that private property, not contraband of war, is not to be interfered with. But as to what is contraband, seems to be wholly unsettled. Every war gives it a new definition—the belligerents always finding some new phase of affairs to justify their conduct.

In the case of Mrs. Alexander's cotton, 2 Wallace, 404, the Supreme Court of the United States held, that cotton within what was called the Rebel States, or rebel territory, was the subject of *capture* by the United States forces, even though it belonged to a person loyal to the United States, on the ground, that it was a material part of the *sinews* of war. Do not the principles laid down in that case settle this question?

If it was a *belligerent* act for the United States forces to seize cotton, that it might not be taken by the Confederates, would it not necessarily follow that it was a belligerent act for the Confederates to seize it, to prevent it falling into the hands of the Federals? 2 Wallace, 424. What but this principle can afford any justification for the desolation of the Valley of the Shennandoah by General Sheridan; the destruction of Atlanta by General Sherman, and of innumerable acts, by both parties, in the four years civil war, the ravages of which still dot the land with ruins? It is admitted upon all hands that the *Confederates* were *belligerents*. They were recognized as such by the principal nations of the world, and by the United States itself. If the recognition of belligerency means anything, it means that the acts of individuals, in the legitimate progress of the war, are to be treated as the acts of the belligerent; that the individual is not responsible to the civil tribunals, for any act done in the legitimate progress of the war.

Unless this be so, every Confederate soldier is liable, now, to indictment, either as principal, in the first or second degree, or as accessory, to the unlawful killing of those who fell upon the field of battle. If this be so, too, this action will not lie, because the trespass is merged in the felony ; since, if this was not a belligerent act, it was robbery : See Revised Code, section 2919. In any view of it, we think the charge of the Court, upon this branch of the case, was right.

2. As to Gue, the other defendant, he was but the agent of the owner of the warehouse. As we hold the seizure of the cotton not a trespass, it came legally and properly into the possession of the warehouseman. He was no trespasser in the receipt of the cotton. The same belligerent force which removed it from the plantation of the owner, against his will, deposited it with the warehouseman in Savannah, and it was legitimately there. If it was improperly sold after it was put there, under the direction of the warehouseman, the clerk who sold it is not responsible. He is but the servant of his principal. If the taking was a trespass, all concerned are liable, but if it was legitimately there, and was sold without authority by the warehouseman, or by his direction, he and not the clerk is responsible.

Judgment affirmed.