WILKINSON *vs.* PETTIT and TAPPAN.

On the 27th of September, 1862, the plaintiff leased certain premises to W. P. and A., of the firm of W., P. & Co., and to their executors, administrators and assigns, for the term of three years from the first of May, 1862, with the privilege to the lessees of continuing the lease in force for the term of two years longer, upon their signifying their election to do so, by a written notice of three months. The firm of W., P. & Co. was dissolved before the expiration of the three years, and their interest in the lease was transferred to P. and T. (P. being one of the original lessees,) with the written consent of the plaintiff. The assignees, before the end of the term, gave the plaintiff due notice of their election to continue the lease in force for two years longer. *Held* that the provision in the lease, relative to the extension of the term two years, was in effect a covenant running with the land, and as such enured to the benefit of P. and T., as assignees of the lease, and was obligatory upon the plaintiff, and must be enforced in favor of the assignees.

THIS cause comes before the court upon exceptions ordered to be heard in the first instance at general term. The action was tried at the Rensselaer circuit, before Justice HOGEBOOM and a jury, and the complaint was dismissed. The action was brought to recover possession of certain premises situated in the city of Troy. On the 27th September, 1862, the plaintiff leased to John Walsh, Phineas S. Pettit, and Aaron C. Anthony, comprising the firm of Walsh, Pettit & Co., the premises described in the complaint, for the term of three years from the 1st of May, 1862. The lease contains the following provision : " And it is further covenanted and agreed between the parties hereto, that the said parties of the second part shall have the privilege, if they so elect, to continue this lease in force for the term of two years after its expiration as above provided, upon condition that they shall signify such their election, by giving to the party of the first part a written notice to that effect, three months before the expiration of their first term." There is a covenant in the lease prohibiting the under-letting of the premises by the parties of the second part, without the consent in writing of the party of the first part. On the 19th day of February, 1864, the firm of Walsh, Pettit & Co. was dissolved, and the business was continued by Pettit and Tappan, the defend-

ants.   The plaintiff executed to the defendants an instrument, of which the following is a copy : " The firm of Walsh, Pettit & Co. within mentioned, has, it is said, dissolved, and the business is to be continued by Phineas S. Pettit and Shepard Tappan.   I consent that the parties composing the old firm may under-let to said Pettit and Tappan, but I shall hold all the members of the old firm responsible for the rent, and for the performance of all the covenants and agreements in the lease.

Feb. 19, 1864.                          J. B. WILKINSON."


The, said Aaron C. Anthony, by and with the consent of the other members of the said firm of Walsh, Pettit & Co., executed to Pettit and Tappan the following :

"For value received, we, Walsh, Pettit & Co. of the city of Troy, county of Rensselaer, and state of New York, do hereby sell, assign, transfer and set over unto Phineas S. Pettit and Shepard Tappan, of the same place, the annexed lease, and all our right, title and interest therein, to have and to hold the same, unto the said Phineas S. Pettit and Shepard Tappan, their heirs and assigns forever.

WALSH, PETTIT & Co."


On the 31st January, 1865, the defendants served upon the plaintiff a notice, of which the following is a copy :

"Mr. Joseph B. Wilkinson, Sir : You will please take notice that we elect to continue in force a lease executed by you on the one part, and John Walsh, P. S. Pettit and A. C. Anthony on the other part, dated September 27, 1862, of the store now occupied by us, and which lease has with your assent been assigned to us, for the term of two years from the 1st day of May next, on the terms and conditions therein mentioned.   Troy, N. Y. January 31, 1865.

PHINEAS L. PETTIT,
SHEPARD TAPPAN."

The plaintiff received the rent to the 1st of May, 1865, and demanded the possession of the premises, previous to the commencement of the action.

*E. Cowen*, for the plaintiff.

*W. A. Beach*, for the defendants.

*By the Court*, INGALLS, J. By the lease the premises were demised to John Walsh, Phineas S. Pettit and Aaron C. Anthony, composing the firm of Walsh, Pettit & Co., and to their executors, administrators and assigns, for the term of three years, with the privilege of an extension of the lease two years, at the election of the lessees. The provision contained in the lease is as follows: "To continue this lease in force for the term of two years after its expiration, as above provided, upon condition that they shall signify such, their election, by giving to the party of the first part a written notice to that effect, three months before the expiration of their first term." The firm of Walsh, Pettit & Co. was dissolved before the expiration of the three years; and their interest in the lease was transferred to Pettit and Tappan, *Pettit being one of the lessees named in the lease.* And such transfer was made by and with the consent of all of the lessees. The language used is comprehensive: "Do hereby sell, assign, transfer and set over unto Phineas S. Pettit and Shepard Tappan, of the same place, the annexed lease and all our right, title and interest therein." The plaintiff consented, in writing, *that Walsh, Pettit and Anthony, might under-let to Pettit and Tappan,* he holding all of the original lessees liable for the rent; and he received the rent up to the 1st May, 1865. If the original lessees chose to accept such consent upon the condition imposed, and thereby continue liable for the rent, in the character of sureties of Pettit and Tappan, certainly there could be no legal objection to such an arrangement. No principle of law was thereby

violated, and the agreement · was voluntary. (*Dexter* v. *Bevins*, 42 *Barb.* 575.)

It seems to have been the intention of the parties, that Pettit and Tappan should acquire all the right which Walsh, Pettit & Co. possessed under the lease. The provision relative to the extension of the term for two years, *is in effect a covenant running with the land, and as such enured to the benefit of the defendants, under the assignment.* No particular words are essential to constitute such a covenant, and it is sufficient if, from the whole instrument, it appears that such was the apparent intention of the parties. (*Tracy* v. *Albany Ex. Co.*, 7 *N. Y. Rep.* 474.)

In *Vernon* v. *Smith*, (5 *Barn. & Ald.* 10,) Best, J. defines a covenant which goes with the estate, as follows : "A covenant in a lease, which the covenantee can not, *after his assignment, take advantage of, and which is beneficial to the assignee* as such, will go with the estate assigned." (*Id.* 11.) " By the term collateral covenant, and which does not *pass to the* assignee, are meant such as are beneficial to the lessor, *without regard to his continuing the owner of the estate.*"

In *Demarest* v. *Willard*, (8 *Cowen*, 210,) Judge Savage remarks : " That the assignee can take advantage of all covenants which run with the land, is perfectly settled, and that on a covenant which runs and rests with the land, an action lies for or against the assignee, at the common law, *although the assignees are not named* in the covenant." (*See also Piggot* v. *Mason*, 1 *Paige*, 412 ; *Hyde* v. *Skinner*, 2 *P. Will.* 197.)

The resolution in *Spencer's Case* declares, " When the covenant extends to a thing in esse parcel of the demise, the thing to be done by force of the covenant is *quodammodo* annexed, and appurtenant to the thing demised, and shall go with the land, and shall bind the assignee, *although he be not bound by express words ;* but where the covenant

extends to a thing which is not in being at the time of the demise made, it can not be appurtenant, or annexed to the thing which hath no being," &c. (1 *Smith's Leading Cases, p.* 22.)

In *Washburn on Real Property,* (*vol.* 1, *p.* 331,) the author remarks: " While, as has been said, there are many covenants which run with the land, *binding* assignees as well as operating in their favor, there is a distinction between such as *bind assignees without being named,* and such as require them to be named, in order to charge them with their performance. And the distinction seems to be, *whether the subject matter* of the covenant is in esse at the time of the demise or not. If it is, the covenant binds the assignee, whether named or not." (*See also Taylor's Landlord and Tenant,* 127, 128, 157.)

It is obvious that the covenant in question had direct reference, and extended to the land demised, and created a beneficial interest therein, in favor of the lessees ; and *that after the assignment,* the original lessees, as covenantees, could not take advantage of the covenant, the same being *beneficial* to the assignees. Nor can the covenant be regarded collateral, within the definition of such a covenant above given. I am, therefore, of opinion that the covenant in question ran with the land, and as such enured to the benefit of the defendants as assignees, and is obligatory upon the plaintiff, and must be enforced in favor of the defendants. This provision extending the term, constituted a part of the consideration of the lease, and the transfer was made with the knowledge and consent of all parties interested, and Pettit was one of the original lessees. (*Rosevelt* v. *Hopkins,* 33 *N. Y. Rep.* 81.) There is no evidence showing that the defendants have failed to observe the obligations imposed upon them by accepting such assignment, or that the plaintiff has been prejudiced by such assignment. I am therefore unable to discover upon what legal or equitable ground the plaintiff should be

allowed to prevail in this action.    The cause was, in my judgment, properly disposed of at the circuit, and a new trial must be denied, with costs.

[ALBANY GENERAL TERM, May 7, 1866.    *Miller, Ingalls* and *Hogeboom,* Justices.]