124 275
126 37

124 275
127 655
128 836

124 275
129 143
f129 660

## WALKER *v.* WADLEY, administratrix, *et al.*

1. A lease contract wherein the owner of land demises the premises for one year, with an option to the tenant during that year to extend the lease upon "notice of intention to take this option," and a further option of renting the premises for an additional term of five years at an increased rental, notice of acceptance of which to be given by the tenant at a stated time preceding the commencement of such additional term, is a lease for ten years at the election of the lessee, absolute for the first year and optional with the lessee as to future continuance under the terms and conditions prescribed in the lease contract.

2. A covenant in such a lease contract that the lessee, "his heirs, executors, and administrators, shall not be at liberty to assign this lease or sublet said premises or any part thereof for the whole or any part of said term, or place any tenant upon said premises or any part thereof, without the consent" of the lessor, is not confined to the first year, but extends during the continuance of the lease, where the term has been extended at the election of the tenant.

3. Where by such lease the premises are demised to the lessee, his executors and administrators, and upon the death of the lessee letters of administration upon his estate are granted to one of his heirs at law, a written assignment of the lease by all of the heirs at law, without the assent of the lessor, and an entry by the assignee with the knowledge and acquiescence of the administrator, constitute a breach of the covenant as to subletting.

4. Acceptance by the lessor of rent after the commission of such breach will not amount to a waiver of the covenant against subletting, unless at the time of receiving the rent the lessor had full knowledge of the facts. Where the rent is due and payable annually, knowledge by the lessor that there has been a breach of the covenant during the year for which the rent is received will amount to a waiver of the covenant so far as that year is concerned, but can not be treated as an acquiescence in the assignment for the full term of the lease, when the lessor had no knowledge that such an assignment had been made.

5. A waiver of a breach of covenant may be pleaded in bar to an action brought by the lessor against the lessee and his assignee to recover possession of the premises because of an alleged forfeiture of the lease growing out of such breach of covenant; but the establishment of this defense will not entitle the lessee or his assignee to be reimbursed for expenses incurred in making valuable and permanent improvements upon the premises during their occupancy of the same.

6. A plaintiff may, as a matter of right, strike the name of one of several defendants, where there is no relief prayed by such defendant against the plaintiff or her codefendants, taking the risk of the effect which the exercise of this right may have on his case.

Argued October 11,—Decided November 13, 1905.

Complaint for land. Before Judge Hammond. Burke superior court. July 28, 1905.

On the 17th day of March, 1903, Mrs. M. J. Walker brought a complaint for land against Mrs. M. J. Wadley as administratrix of the estate of W. M. Wadley, and Daniel Sons & Palmer, J. F. Carter, and William Warnock. Two of the defendants, Mrs. Wadley, as administratrix, and the firm of Daniel Sons & Palmer, filed an answer in which they denied the right of the plaintiff to recover, and set up the following special defense: On November 17, 1899, the plaintiff conveyed the land sought to be recovered to William M. Wadley for one year, with the option of four more, at and for the yearly rental of $325, with a further option of five years longer, at $350 a year. Wadley took possession, remained the first year, and subsequently, on October 1, 1900, exercised his option to remain four years longer. He died on November 17, 1900, in possession of the property, after he had become bound for four years more at a yearly rental of $325 a year, with the right and privilege of keeping the premises for five years longer at an increased rental of $350 a year. After his death his administratrix continued the possession of her intestate, and expects, in behalf of his estate, to exercise the option for five years longer, at the time he was required to do so, to wit, on October 1, 1904. Acting under the contract of rental, Wadley incurred a great deal of expense preparatory to carrying on farming operations upon the leased premises, and erected valuable improvements thereon, paid the rent when due, up to the time of his death, and his administratrix has since paid the rent as it fell due. In order to carry on the farming operations, care for the premises of the plaintiff, and protect the interest of the estate therein, the administratrix has associated with her the other defendants in the use, occupation, and cultivation of the land; and, "with full knowledge of the situation," the plaintiff has accepted payment from the defendants for the use and occupation of the property, and no rent is due the plaintiff. As she "elects to turn out these defendants, she must in equity return to defendants $1,104.00, the value of the permanent improvements placed by them on said property, and for which the said property is in equity chargeable, said improvements being necessary and [having] increased the value of the land, and also return to the estate of Wadley his expenditures used on the property rented from her of $1,000, and also pay his estate the further sum of $2,500, the value of said premises for the unexpired term of rental over and above the contract rate." The answer con-

cluded with a prayer that the defendants have judgment against the plaintiff for these several amounts. The plaintiff demurred to the defendants' special plea, on the grounds, (1) that the allegations of fact therein set forth presented no legal or equitable defense, and (2) that they did not present any equity for the consideration of the court, or entitle the defendants to invoke the equitable powers of the court. The court overruled the demurrer; whereupon the respective parties agreed that the presiding judge should, without the intervention of a jury, try the case upon an agreed statement of facts and certain evidence to be submitted in connection therewith. Pending the hearing before the judge the plaintiff sought to amend her petition by striking therefrom the name of Mrs. Wadley, as administratrix, as it appeared from the evidence that she was not in possession of the premises at the date of the institution of the action; but the judge declined to allow the proffered amendment to be made. From the agreed statement of facts the following appears:

The title to the land sued for is in Mrs. Walker, the plaintiff, and was at the commencement of the action; and she was in the legal and quiet possession of the premises up to January 1, 1900. On November 17, 1899, she executed a lease to W. M. Wadley, since deceased, in which she was designated as party of the first part and he as party of the second part, and which embraced the following recitals and provisions: "That the said party of the first part, for and in consideration of the rents hereinafter reserved to be paid, and the covenants to be performed by the said party of the second part, hath demised, leased, and to farm-let, and by these presents doth demise, lease," etc., the plantation in Burke county known as the "Walker place," containing nine hundred acres, more or less. "To have and to hold said plantation unto the said party of the second part, his executors, administrators, or assigns, when permitted, from the first day of January, in the year nineteen hundred, for the full end and term of the year thence next ensuing. And the said party of the second part doth covenant and agree to pay the said party of the first part, her executors, administrators, and assigns, the sum of three hundred and twenty-five dollars, annually during the term aforesaid, in one payment on November 1st, 1900, and that without any abatement." The party of the second part also covenants to keep the premises in repair while he continues to occupy the same. "And it is further covenanted that the said

party of the second part, his heirs, executors, and administrators, shall not be at liberty to assign this lease or sublet said premises, or any part thereof, for the whole or any part of said term, or place any tenant upon said premises or any part thereof, without the consent of the said party of the first part. And the party of the second part shall have the option of renting the said plantation for the further term of four years after the completion of the first term, at a yearly rental of three hundred and twenty-five dollars, payable on the 1st day of Nov. in each year, notice of intention to take this option to be given by Oct. 1st, 1900. And in the event of acceptance of said option, the party of the second part shall have a further option of renting the said plantation for a further term of five years, at an annual rental of three hundred and seventy-five dollars, payable on the 1st day of Nov. in each year. Notice of intention to take this option to be given by the first day of Oct. preceding the commencement of said term. And it is further covenanted that if default shall be made in the payment of the rents reserved to be paid within one month from the time the same shall become due, or if any of the covenants agreed to be kept by the said party of the second part in the foregoing indenture shall be broken, it shall and may be lawful for the said party of the first part to determine this lease by twenty-four hours notice in writing; and upon giving the said notice, this lease, and every part and parcel thereof, shall become void, except to enable the party of the first part to collect all rents which may be due up to the time of said notice; and upon such notice, all rights of the said party of the second part shall cease and utterly determine, and it shall be lawful for the said party of the first part to resume and retake possession of said premises, either by personal entrance or by any process under the acts of the General Assembly of the State of Georgia in that behalf provided."

This contract of lease was executed under seal by each of the parties thereto, and Wadley entered into possession under this lease on January 1, 1900. On or about August 29, 1900, he notified Wm. Jones Walker, agent for Mrs. Walker, that it was his intention to accept the option under the lease for an additional term of four years after the expiration of the first term. Wadley died November 17, 1900, in possession of the premises, after having paid the rent for 1900. Mrs. Wadley obtained temporary letters of administra-

tion upon his estate on November 21, 1900, and permanent letters on January 7, 1901. She made repeated efforts to induce Mrs. Walker to permit her to sublet the land or assign the lease, which Mrs. Walker declined to assent to. Neither in the appraisement of the estate of Wadley nor in the returns of his administratrix was any reference made to the lease of the "Walker place." In the year 1900, during the lifetime of Wadley, he, without the consent of Mrs. Walker, sublet portions of the plantation to certain tenants for that year, taking rent notes from them; but the remainder of the plantation was farmed by him on the cropper or wages system. In the summer or fall of 1900, he also, without the consent of Mrs. Walker, rented various farms on the place to tenants for the year 1901; but these tenants did not, as such, cultivate the land in 1901, having given up their leases upon the death of Wadley. In the month of December, 1900, Mrs. Wadley and the other heirs at law of W. M. Wadley, sold the personal property of his estate and assigned the aforesaid contract of lease to Daniel Sons & Palmer, the transfer of this lease being reduced to writing and dated to correspond with the time the sale was effected. The consideration for the assignment of the lease was the payment by the assignee of $150 over and above the annual rental provided for in the lease. The firm of Daniel Sons & Palmer took possession of the "Walker place" under this assignment on January 1, 1901, and remained in possession, through persons acting under authority as its representatives, up to the time the present action was filed on March 17, 1903, "relying upon the warranty of Mrs. M. J. Wadley and her promise to keep them in possession." Neither Mrs. Walker nor her agent or attorneys had knowledge of this assignment until March 31, 1905, when the writing was exhibited to them, having been impressed by correspondence had with the attorney representing the estate of Wadley that "the administratrix was undertaking to carry on the farms of the estate by Daniel Sons & Palmer and by herself," and this attorney being under the impression, at the time this correspondence was had, that the plantation would be run as stated in his letters. Nor was the plaintiff chargeable with anything more than implied notice of the fact that the firm of Daniel Sons & Palmer based its right of possession under or by virtue of the assignment mentioned. Plaintiff believed from the apparent connection that firm had with the place that some arrangement had been made by

the administratrix with its members which it was hoped by them would have the same effect as an assignment of the lease, but that this arrangement sought nominally to preserve the lease to the estate. This belief was based on the fact that notwithstanding the representations made in the letters received from the attorney for the Wadley estate, to the effect that the administratrix proposed to carry on the farming operations on the "Walker place," and notwithstanding Daniel Sons & Palmer had endeavored in the latter part of 1900 to purchase the lease and desired possession of the place, but were informed of plaintiff's refusal to consent to an assignment of the lease, yet the farming operations were apparently being conducted by that firm, though its members did not reside on the place. The plaintiff understood that the administratrix had not actually assigned the lease to Daniel Sons & Palmer, because of plaintiff's refusal to give her consent; but the circumstances above recited, coupled with the fact that under the law an administratrix can not continue the business of an estate beyond the year of the death of her intestate, induced the plaintiff to believe that the administratrix had, "if not directly or in form, assigned to Daniel Sons & Palmer some interest in the lease and in her alleged right of possession under the same, if not her entire interest. But plaintiff had no information or knowledge as to what the arrangement was, other than a surmise from the letters  .  . and the circumstances aforesaid, until the bringing of the pending action. She made the said Daniel Sons & Palmer parties defendant upon the theory that whatever said arrangement was, it was entered into in pursuance of an attempt or scheme to evade what plaintiff claims is the law and the expressed terms of the contract, which defendants deny," and she "claims that said arrangement was, in effect, an assignment either partial or total, in violation of the law and the contract." On January 3, 1901, Mrs. Walker gave formal written notice to Mrs. Wadley, as administratrix, to vacate the premises, on the ground that there had been a "breaking of the covenants of said lease by the tenant in subletting a part of said premises, and the failure to keep the said premises in repair." By a letter written on the same day by the agent of Mrs. Walker to the attorney representing the estate of Wadley, in which letter this written notice was enclosed, he was informed by the writer that he had visited the plantation and found it in a worse condition than when

it was leased, and that he had information that Mr. Wadley had sublet two portions of the place, without Mrs. Walker's consent; that she considered this as two distinct violations of the covenants of the lease, and had accordingly authorized the writer to give notification to this effect. In a subsequent letter, dated January 13, 1901, written in behalf of Mrs. Walker by her attorneys and addressed to the attorney representing the estate of Wadley, he was notified that she desired them to state that if the administratrix would keep the covenants of the lease and make the repairs stipulated therein, Mrs. Walker would not proceed to dispossess her or to terminate the tenancy; that the notice previously sent was intended to remind the tenant of the failure to perform the covenants of the lease and of the consequences that would follow a continued violation of its terms; and that Mrs. Walker would not consent to an assignment of the lease or to the subletting of the premises. On October 31, 1901, the attorney just mentioned, acting as the representative of the administratrix of the Wadley estate, sent to Mrs. Walker a check drawn in favor of Mrs. *Mary* J. Walker for $325, stating in a letter in which the check was enclosed that it was for rent of Walker place, due November 1st under the terms of the lease. On November 4, 1901, the agent of Mrs. Walker returned this check with the statement in a letter accompanying it that he did so because it had not been drawn payable to the order of *Margarett* J. Walker, the real name of his principal. On the following day the attorneys acting for Mrs. Walker mailed to Mrs. Wadley, as administratrix, a notice to quit at the expiration of the year, because the rent had not been paid when due, stating in their letter that "Under the law of Ga. the landlord has the right to say who shall occupy her premises. In this case, as the tenant is dead and as you, his representative, do not care to occupy the premises, she does not care to have people there without her consent." They also enclosed a copy of a letter written on the same day to the attorney of the administratrix, in which they said: "Without conceding that the administratrix had any legal right to occupy the premises under the contract entered into by W. M. Wadley with Mrs. Walker, we think that, even under your construction of that contract, her failure to pay the rent when due worked a forfeiture of whatever right the administratrix may have had. We submitted the proposition that you made some time since to purchase of Mrs.

Walker the right to sublet the premises, which proposition she declined, advising us that she would under no circumstances permit Mrs. Wadley to sublet the premises, even if she had the right to occupy them herself. A portion of the land was sublet last year without Mrs. Walker's consent, and we regard the transaction under which the farm was operated this year as equivalent to subletting, if not so as a matter of fact." On the same day, November 5, 1901, the attorney representing the administratrix enclosed in a letter sent to the agent of Mrs. Walker a check made payable to "Margarett J. Walker," which check she accepted and negotiated. Thus matters rested till the fall of 1902. On October 30th of that year, Mrs. Walker's attorneys sent to the representative of the administratrix a letter the contents of which were as follows: "We are instructed by Mrs. M. J. Walker, through her agent, William Jones Walker, to acknowledge the receipt of $325.00 sent her as 'rent' for her plantation in Burke the present year. As Mrs. Walker does not recognize Mrs. Wadley, either individually or in any representative capacity, as her tenant, but as a person holding her place without her consent, but against her earnest protest, she can only credit the amount forwarded her on Mrs. Walker's demand for use and occupation. Mrs. Walker claims that the true rental value of the place for the year 1902 is $600.00. Representing her, we beg that you will at once present to Mrs. Wadley, in whatever capacity she assumes to act, the demand of Mrs. Walker for the balance due her for the use and occupation of the place for 1902, to wit, $275.00. These are our instructions." On March 14, 1903, Mrs. Walker caused a written notice to vacate the premises to be served upon Mrs. Wadley in her capacity as administratrix, therein stating that even if she ever acquired any rights under the lease, she had forfeited the same by reason of her violations of its covenants with respect to subletting the premises and keeping the same in repair, "which violations have occurred during each of the years since Jany. 1st, 1901, and the whole of said place being practically, in contemplation of law, if not actually, sublet for the present year, and being occupied by strangers not under [her] personal supervision and guidance." On October 29, 1903, after the plaintiff had instituted the present action, she gave to Mrs. Wadley a receipt for $325, therein stating their respective contentions and reciting that the payment was received without prejudice to either and was to be

credited accordingly as the issue between them might be ultimately determined. Counsel for Mrs. Wadley consented that the money might be retained by Mrs. Walker upon the conditions stated in this receipt, and on November 10, 1904, another payment of $325 was accepted and a similar receipt given, upon the same understanding.

It further appeared from the agreed statement of facts, that W. M. Wadley resided in Burke county at the date of his death, but at that time Mrs. Wadley lived in the county of Richmond, where she has since continuously resided. The plaintiff, her agent and attorneys, had notice prior to January, 1903, that W. M. Wadley did, in the year 1900, sublet a one-horse farm to one tenant by the name of Harris, and another one-horse farm to a tenant named Williams; but did not, prior to the fall of 1902, or the early part of 1903, have any information as to other subletting. Mrs. Wadley, the administratrix, not being allowed under the law to continue the business of her intestate longer, on November 24, 1900, sold the perishable property of the estate, together with the lease of the Walker place, to Daniel Sons & Palmer, at private sale at Millen, Ga., for some $4,200, and that firm took possession of the personalty on the Walker place and of the plantation itself, upon an understanding with Mrs. Wadley that they would run the same in her name. Subsequently, during the year 1901, a written transfer of the personal property and of all interest in the lease was executed by all of the heirs of W. M. Wadley, including Mrs. Wadley, to Daniel Sons & Palmer, and that firm has been farming the property, through its agents, ever since, remitting each year to Mrs. Wadley $325, who, in turn, sent that amount to Mrs. Walker. On August 31, 1904, the attorney representing Mrs. Wadley, as administratrix, wrote a letter to Mrs. Walker, stating that the estate of Wm. M. Wadley, through its legal representative, desired to exercise the right given him under the lease to continue the same for an additional period of five years at the price stipulated in the lease. This notice was given at the request of Daniel Sons & Palmer, but this fact was unknown to the plaintiff. The other defendants to the action, J. F. Carter and William Warnock, were at the time of bringing suit in possession or occupying the land sued for, under authority of Daniel Sons & Palmer.

Evidence touching the claim of the plaintiff to mesne profits was introduced in her behalf; and the defendants introduced evidence

bearing on this issue, as well as evidence in regard to the value of the improvements which had been placed upon the premises subsequently to the entry under the lease. After hearing the argument of counsel, the presiding judge rendered judgment in favor of the defendants on the ground that, on the admitted facts, the plaintiff was not entitled to prevail. Exception to this judgment was taken by Mrs. Walker, who in her bill of exceptions also assigns error upon the overruling of her demurrer to the defendants' plea, and complains of the refusal of the court to allow her to strike from her petition the name of Mrs. Wadley as a codefendant.

*Phil. P. Johnston, H. J. Fullbright,* and *Saussy & Saussy,* for plaintiff.

*William K. Miller* and *Lamar & Callaway,* for defendants.

EVANS, J. (After stating the facts.) 1. The lease, the provisions of which appear in the foregoing statement of facts, bound the lessor for the term of ten years, at the election of the lessee. The term was absolute for the first year, and upon the lessee giving the stipulated notice of his acceptance of the option to extend the term four years from January 1, 1901, the lease contract became binding on both parties for that period of time. If there was any irregularity in giving the notice to Wm. Jones Walker, as agent for the lessor, instead of to the lessor herself, such irregularity was waived by the subsequent recognition on the part of the lessor of the continuance of the lease. The extended term of four years was not a new demise, but only an extension of the term of the lease from one to five years according to its express provisions.

2. Therefore the covenant against the assignment of the lease or subletting related not only to the first year's existence of the lease, but was likewise coextensive with the continuance of the lease. Manifestly it was the intention of the contracting parties that the same covenants were to be binding during the continuance of the lease, save as to the amount of rental to be paid, whether its existence continued one, five, or ten years. *Corporation of the London Assurance* v. *Paterson,* 106 *Ga.* 538; Taylor's Land. & Ten. §332.

3. The lease being made to Wadley, his executors and administrators, it was clearly the right of his administratrix to continue in possession of the leased premises as long as, under the law, she was authorized to continue his business, which was until the expiration

of the current year of his death. Civil Code, § 3436. By accepting rent paid by the administratrix under the terms of the lease for the year 1901, the lessor recognized her as a tenant lawfully in possession thereunder for the additional term of four years therein provided for. So, unless the administratrix committed a breach of the covenants upon which the lease was made, the lessor was estopped from claiming that she was a mere intruder. That she did commit a breach of the covenant against assigning the lease or subletting is evident; for after the lessor had positively declined to give assent to the assignment of the lease to Daniel Sons & Palmer, the administratrix turned over the possession of the plantation to that firm upon the understanding that it was to be run in her name, but for its benefit, in order that effect might be given to the written assignment of the lease which she and the other heirs of the estate had executed. This transaction was colorable, was concealed from the lessor, and was in direct violation of the covenant against subletting. A violation of this covenant could only be avoided by the operation of the plantation by the administratrix in person or through authorized agents for the benefit of the estate she represented. She could not accomplish by indirection what the lease expressly forbade her to do without the assent of the lessor. Indeed the defendants' plea practically admitted the breach of covenant, and their defense was that there had been a waiver of this breach on the part of the plaintiff.

4. The lessor was not informed or apprised of the assignment of the lease by the heirs of Wadley to Daniel Sons & Palmer until after the institution of her suit. She "believed from Daniel Sons & Palmer's apparent connection with the place that some arrangement had been made by the administratrix with them, which it was hoped by them would have the same effect as an assignment, but that such assignment sought nominally to preserve the lease to the estate;" and certain facts "induced plaintiff to believe that the administratrix, if not directly or in form, had assigned to Daniel Sons & Palmer some interest in the lease, and in her alleged right of possession under the same, if not her entire interest, . . and that it was entered into in pursuance of an attempt or scheme to evade what plaintiff claims was the law and the express terms of the contract." Entertaining such suspicions and inferences, she gave notice that the lease had become forfeited because of the violation of

the covenant against subletting. The lessor admits that the facts of which she had knowledge raised the inference that this covenant of the lease had been violated. With such knowledge, and after giving notice insisting upon a forfeiture of the lease, she, in the fall of 1902, accepted rent tendered under the provisions of the contract. When the administratrix sent to the lessor the money contracted to be paid, upon the express condition that it was to be accepted as rent pursuant to the terms of the contract, if this condition was not satisfactory to the lessor, she should either have returned the money to the administratrix of Wadley or have notified her that she held the same subject to her order. *Jenkins* v. *National Assn.*, 111 *Ga.* 732. The lessor could not apply the money tendered in pursuance of the contract as rent to a claim which she asserted independently of the contract. Her retention of the money under these circumstances was equivalent to its acceptance under the provisions of the contract, as rent from a tenant lawfully in possession of the premises, notwithstanding the disclaimer of the tenant's right of possession made in the receipt which the lessor sent to the administratrix. Acceptance by the lessor of rent accruing after the breach of a covenant, with knowledge thereof, amounts to a waiver of a forfeiture resulting from that particular breach. Taylor's Land. & Ten. §499. And where rent is payable annually, the acceptance of the same with knowledge by the lessor that there has been a breach of covenant during the previous year and before the accrual of the rent which is tendered, is to be regarded as a waiver of that breach of the covenant. But where the lessor is ignorant of an assignment of the lease for the full term of the tenancy, acceptance of the rent with knowledge limited to inferences drawn from facts which give no information as to the existence of a written assignment of the lease for the full term will not extend the waiver to the full period of the term covered by the lease assigned. When the rent for 1902 was tendered, the admitted facts justify the inference that the lessor knew that the covenant against subletting had been violated during the years 1900, 1901, and 1902. For the violation of the covenant during these years, her acceptance of the rent with knowledge of such violation was a waiver of the forfeiture for such breaches. "When, however, there is a continuing cause of forfeiture, the landlord will not be precluded from taking advantage of it by receiving rent which accrued after the

breach was originally committed." Taylor's Land. & Ten. § 500. Thus, when the lessee's administratrix continued to allow Daniel Sons & Palmer to remain in possession of the land and operate the farm under the assignment of the lease by the heirs of her intestate, there was a continuing breach, and the acceptance of rent by the lessor only waived the right to forfeit the lease for such breaches as occurred prior to the accrual of the rent of which she had knowledge. When the lessor notified the administratrix of Wadley in March, 1903, that she claimed a forfeiture because of the violation of the covenant against assignment or subletting, then, after the expiration of the time stipulated in the contract, the lease became forfeited by reason of the violation of that covenant, and the lessor could sue for possession. This she did in a few days; and under the admitted facts, she was entitled to maintain her action from that time. It was therefore erroneous for the court, upon the agreed statement of facts, to render judgment for the defendants.

5. A waiver of a breach of covenant may be pleaded in bar to an action brought by the lessor against the lessee and his assignee to recover possession of the premises because of an alleged forfeiture of the lease growing out of such breach of covenant. So much of the plea as set up this defense should not have been stricken. But the establishment of this defense would not entitle the lessee or his assignee to be reimbursed for expenses incurred in making valuable and permanent improvements on the land during their occupancy of the same. Hence so much of the plea as sought to recover a money judgment against the plaintiff should have been stricken on demurrer.

6. The code provides (Civil Code, § 5104) that when two or more persons are sued in the same action, either on a contract or for a tort, the plaintiff may amend his declaration by striking out one or more of such defendants and proceed against the remaining defendant or defendants, if there is no legal difficulty in the way. The pleadings in the present case do not suggest any legal difficulty to the elimination of the administratrix of Wadley from the case. She has not prayed any relief to which she is entitled, either against the plaintiff or her codefendants; and as the plaintiff brought her into court, the plaintiff should be allowed to discontinue the case as to her by having her name stricken from the petition, the plaintiff taking whatever risk to her case that may result to her by the

exercise of this statutory right. *Coston* v. *Coston*, 66 *Ga.* 382. The court should have allowed the amendment striking the name of Mrs. Wadley, as administratrix, as a party defendant.

*Judgment reversed. All the Justices concur.*