## BAKER *v.* DAVIS.

1. A person who wrongfully enters upon land and proceeds to cut timber thereon is a trespasser, and subject to be sued as such, whether he is acting for himself or is agent for another. If he commits such trespass by the direction of another as his principal, both may be sued as joint wrong-doers. In such a case an action for damages against both as trespassers may be brought in the county of the residence of either.

2. In such a case, if the joint wrong-doers are threatening and proceeding to commit the trespass, and they are insolvent, or the damages will be irreparable, they may be enjoined by the owner of the real estate and timber from the commission of such trespass, in one petition brought in the county of the residence of either of them.

3. Where the petition, duly verified, alleged that one of the defendants was a corporation of Glynn county, and the others, who were actually engaged in the cutting of the timber, were residents of Coffee county, where the petition was filed; and though personally served by the sheriff, the individual defendants filed no plea to the jurisdiction, and the defendant corporation answered that the allegation that its principal office was in Glynn county was true, but for want of information it could neither admit nor deny the statement as to the other defendant; and where, on the hearing of the application for injunction, no evidence was introduced to show that the individual defendants were not in fact residents of the county where the suit was brought, except that the defendants admitted that one of such individuals, together with his wife, was living in a house in Coffee county, that he was a citizen and resident of the State of Florida, and his children were there, and he expected to return there: *Held*, that this was not sufficient to show that the superior court of Coffee county was without jurisdiction to try the equitable proceeding.

4. Where one, claiming to be the owner of land and timber on which a prior owner had given a "timber lease," filed an equitable petition in one county, alleging that, under a proper construction of the lease, only trees of a certain size could be cut, and that this was being disregarded and trees of a smaller size were being cut; and where subsequently, in another county, where the land was located and where it was alleged that some of the defendants resided, he filed another equitable petition against the same defendant and others, seeking to enjoin the cutting of any timber at all, on the ground that at the time when the second proceeding was filed they had no right to do so, and that such cutting was a trespass, the pendency of the former proceeding furnished no ground for a plea in abatement to the latter.

5. That the defendant in the first proceeding filed an amendment to its answer therein, alleging that, under the original timber lease which had come to it by regular transfers, and under an extension thereof, it had the right to cut, did not furnish a ground for plea in abatement to the second proceeding seeking to enjoin the alleged joint trespassers and to recover damages from them.

6. The demurrer set out no sufficient ground for refusing the injunction.

7. If a contract for an expressed consideration authorized the cutting of timber for a certain length of time, and also agreed that if the party to whom it was made should desire a further extension of the time for one year, he might have it upon making a certain payment, the consideration furnished a basis both for the present right and the option or privilege of extension; and the latter was not a nudum pactum.

8. Where a person who owned a "timber lease," which conferred the right to cut timber for sawmill purposes on a certain tract of land for a specified number of years, conveyed the timber and rights covered by the lease held by him to another, this did not estop him from acquiring rights taking effect after the expiration of the original lease, and not inconsistent with his grant. If he acquired a right of cutting timber on the land after the right under the original lease expired, this would not pass by operation of law to his grantee.

9. After the holder of a "timber lease," which by its terms limited the right to cut timber to a specified time, had conveyed it to another person, if he acquired from the original maker of the lease a right to cut timber on the land for a specified time after the expiration of that fixed in the original lease, such a right did not attach itself as a covenant running with the land in the hands of his grantee.

10. The contract extending the time fixed in the original lease not containing any words of assignability, and not having been assigned to the previous grantee of the taker thereof, and not passing to him by operation of law, such grantee could not exercise an option for a further extension contained in such contract.

11. A statement of counsel made in argument of a case, touching the construction of a paper, will not estop his client from contending for a different construction in a subsequent litigation, it not appearing that the court acted on such construction, or adjudicated it to be correct. This is especially true where it does not appear that the adverse party was misled by such statement, or that it was intended by the maker that he should rely on it, or that he did in fact rely upon it and act to his injury.

12. The sworn petition alleging a case of irreparable damages, and there being no controversy that each side intends to cut the timber from the land and each claims that it will be irreparably damaged; and it appearing that the entire contention was based on the question of the right to cut the timber involved in the litigation, and, from the evidence introduced, it appearing that the defendant did not have such right, it was error to refuse the injunction.

Argued January 21,—Decided February 16, 1907.

Petition for injunction. Before Judge Parker. Coffee superior court. September 26, 1906.

Baker filed his petition in the superior court of Coffee county against Davis, Nelson, and Lewis, alleged to be citizens and residents of that county, and the Taylor-Cook Cypress Company, alleged to be a corporation having its principal office in Glynn

county, seeking to enjoin the defendants from continuing and consummating a trespass by entering upon land and cutting timber alleged to belong to the plaintiff, and also to recover damages against them as joint trespassers. By amendment it was alleged that the other defendants were employees of the Taylor-Cook Cypress Company, and were engaged in cutting and removing sawmill timber from the lands of the plaintiff, and that the company directed them so to do. The defendant corporation pleaded to the jurisdiction, on the ground that the action should have been brought in Glynn county, where its principal office was located. It also filed a plea in abatement, claiming that the same matter was involved in a suit pending in Glynn superior court. It further demurred to the petition and answered it, denying that the plaintiff was the owner of the timber, or was entitled to any relief, but asserting that it had the lawful right to cut such timber. It alleged, that one Vickers was originally the owner of the land and timber; that he sold and conveyed to Timmons & Company all of the timber suitable for sawmill purposes on the land described; that by regular transfers the timber became the property of this defendant; that the immediate grantor of this defendant was the Ocmulgee River Lumber Company; that before the time allowed in the original lease for cutting the timber had expired (fifteen years), Vickers executed to the Ocmulgee River Lumber Company a contract and agreement for the extension of the time within which that company and its assigns could exercise the right, and that subsequently that company sold and conveyed all of its title, claim and interest in and to the sawmill timber on said land to this defendant; that this defendant tendered to Vickers and to Baker, who had taken the conveyance under Vickers, the amount necessary for a further extension as provided in the contract with the Ocmulgee River Lumber Company, but that it was refused; and that for it to be enjoined from exercising this right would cause irreparable damage.

The individual defendants made general denial of the material allegations of the plaintiff, except that they admitted that they were engaged in cutting the timber, but alleged that they were doing so solely as the servants and employees of the Taylor-Cook Cypress Company, that they personally claimed no right, title or interest in the timber; and that they were advised and believed

that the corporation named did have such title and right to cut. On the hearing the presiding judge denied the injunction; and the plaintiff excepted.

*J. W. Quincey, Leon A. Wilson,* and *Spencer R. Atkinson,* for plaintiff. *F. Willis Dart* and *Bennet & Conyers,* for defendants.

LUMPKIN, J. (After stating the foregoing facts.)

1-3. Suits against joint trespassers residing in different counties may be brought in the county of the residence of either. Civil Code, §5872. One who unlawfully cuts the timber of another is a trespasser. He may be sued as such, although he acts under orders of a third party. If one wrongfully enters on the land of another and cuts trees, he is a trespasser and liable, no matter who told or directed him to commit the tort, or whether such person would also be liable or not. The master and servant may both be liable for such a trespass of the former, committed by command or under authority of the latter. *Southern Ry. Co.* v. *Grizzle,* 124 *Ga.* 735. Each of them is a substantial defendant. *Mashburn* v. *Dannenberg Co.,* 117 *Ga.* 568 (13); *Central R. Co.* v. *Brown,* 113 *Ga.* 414. If joint trespassers are insolvent or the damage irreparable, instead of suing for damages, equity may grant relief by injunction. And the proceeding may be brought in the county of the residence of one of the defendants against whom substantial relief is prayed. Here all of the defendants are sued as joint trespassers, and both injunction and damages are prayed against them. We think it is quite evident that the defendants who are alleged to be actually committing the trespass on the realty and cutting the timber, and who are sued as joint trespassers with the company employing them, and against whom both damages and injunction are sought, are substantial defendants. This point is practically controlled by the decision in *Wall* v. *Mercer,* 119 *Ga.* 346. This differs from the case of *Meeks* v. *Roan,* 117 *Ga.* 865, where the appointee or trustee under a deed containing a power of sale was proceeding merely to exercise that power for the benefit of another person residing in the State, and where the appointee had no interest in the subject-matter. He was not trespassing on real estate or committing any like positive tort, nor was he sought to be held liable as a joint tort-feasor. So likewise in *Railroad Commission* v. *Palmer Hardware Co.,* 124 *Ga.* 633, where railroad commissioners fixed a rate from Atlanta to certain points, and it was sought to

compel the commissioners to leave the counties where they resided and go to the county where the main office of one of the railroad companies was located, upon the mere allegation that the companies would obey the order issued by the commissioners and lower the rates from Atlanta, thereby indirectly injuring the business of certain dealers of the county where the proceeding was filed. Moreover, the interests of the plaintiffs and the railroad companies were not antagonistic to each other, but both were antagonistic to the railroad commissioners. Nor is this similar to the case of *Townsend* v. *Brinson,* 117 *Ga.* 467, which was not a case of trespass on real estate or cutting timber, but of levying a distress warrant; and it was held that substantial equitable relief was prayed only against the resident of another county, and the defendants residing in the county of the suit would have been merely nominal parties to an equitable proceeding in the county of the substantial defendant. Besides, no allegations of insolvency or irreparable damage appear from the report. In *Etowah Milling Co.* v. *Crenshaw,* 116 *Ga.* 406, an equitable proceeding was brought in Bartow county to enjoin a corporation of Fulton county from obstructing the flow of water of a stream and for damages. It was held that the right conferred by statute to bring an action for damages in the county where the cause of action originated, did not include a right to obtain equitable relief there, if the defendant resided in another county. Many of the cases on the subject will be found collected in *Railroad Commission* v. *Palmer Hardware Co.,* supra, and an examination of them will show how each differed from the present case.

Here the petition alleged that three of the joint defendants were citizens and residents of Coffee county, where the bill was filed, and that the fourth, the Taylor-Cook Cypress Company, had its principal office in Glynn county. It alone pleaded to the jurisdiction, alleging that the other defendants were its employees. They were personally served by the sheriff of that county. They demurred to the petition and answered it. True, they did deny in general terms the paragraph of the petition which alleged their residence to be in Coffee county, and that of the company in Glynn. But they filed no plea to the jurisdiction, nor set out where they did reside, and a part of such denial was in conflict with the company's own contention as to its domicile. It was conceded on the

hearing that one of them permanently. resided in Florida, but temporarily resided in Coffee county. So far as was disclosed on the hearing of the application for injunction, the petition appears to have been properly filed in Coffee county. If in fact there was no cause of action against the defendants alleged to be of that county, and no venue fixed there by their residence, the jurisdiction might also fail as to the corporation of Glynn county. *Central Ry. Co.* v. *Brown,* 113 *Ga.* 414 (3); *Ross* v. *Battle,* 117 *Ga.* 877.

4, 5. A plea in abatement was filed by the Taylor-Cook Cypress Company, on the ground that a previous suit had been filed in Glynn county and was there pending, involving the same subject-matter. An equitable proceeding had been filed by the same plaintiff against the Taylor-Cook Cypress Company in Glynn county. But there Baker, the plaintiff, alleged, that, under a proper construction of the original grant from Vickers, the defendant company only had the right to cut timber measuring more than fifteen inches in diameter two feet from the ground, and that by reason of the growth of trees since the contract was made, the plaintiff was entitled to have the cutting of trees measuring less than eighteen inches enjoined. This evidently did not involve the questions presented in the case at bar nor seek the same relief. But it is contended that in that suit the defendant amended its answer, alleging the extension of the time allowed for cutting by the original grant or lease from Vickers; that it, as grantee or assignee of the Ocmulgee River Lumber Company, had succeeded to the rights of that company, and had made a tender for the purpose of continuing the time for cutting; and that Baker was interfering with the agents of the defendant and was trespassing and cutting timber. By way of cross-petition injunction was asked to restrain him from cutting any timber and from interfering with the hands of the defendant. This was an answer in the nature of a cross-proceeding to enjoin Baker from cutting timber or interfering with the hands of the company and to recover damages of Baker. No action was taken on the amended answer except to order it filed. The present proceeding is to enjoin the Taylor-Cook Cypress Company and certain persons with it from committing an alleged trespass or cutting any timber, on the ground that they had no right to do so, and to recover damages against them. True, the amended answer of the defendant in the former case set up the extension of the

time for cutting the timber. But a plea in. abatement is based on the principle that a plaintiff can not be allowed to harrass a defendant with different suits for the same thing. He is not doing this. His suits are for different causes. They are neither identical in subject-matter nor in parties. It is the defendant who sought to carry into the former case the allegations in regard to extending the time for cutting the timber. It now says that it has recently filed such an amendment to its answer, and that therefore the plaintiff's suit should abate. It could withdraw or change its answer, and the plaintiff could not prevent it. His second suit for a different cause of action with additional parties will not abate because of such a plea. Civil Code, §§ 3737, 5094.

6. The demurrer set forth no sufficient ground for refusing the injunction.

7. Under the original grant or "timber lease" from Vickers, the time allowed for cutting the timber was fifteen years. This lease or conveyance of timber passed by regular transfers to the Ocmulgee River Lumber Company, and from it to the Taylor-Cook Cypress Company. An instrument dated twenty days after this last conveyance was executed by Vickers to the Ocmulgee River Lumber Company. It recited that the timber had become the property of that company, and granted to it an extension of time in which to cut it. The paper recited a consideration, granted an extension of one year and a privilege, if it so desired, to have a further extension of another year on certain payments. It is insisted that this was unilateral and without consideration. Not so. The consideration of $583.50 recited was for the whole contract, including not only the one year's actual extension, but also the privilege of a further extension for another year. *Wellmaker* v. *Wheatley,* 123 *Ga.* 201; *Walker* v. *Wadley,* 124 *Ga.* 275. A contract for a privilege or option may be made for a consideration, and the maker can not withdraw during the time fixed in the contract within which the other party has the right to exercise the option. This is very different from cases where a mere option is given and not accepted, or where the consideration of one promise is only the acceptance or mutual promise of the other party.

As to the year included in the actual extension the present case seems to raise no controversy. Whether the defendant company cut during that year by verbal or written authority from the Oc-

mulgee River Lumber Company would give no cause of action to Baker, who took under Vickers. *Morgan* v. *Perkins, 94 Ga.* 353.

8-10. The controlling question is whether the Taylor-Cook Cypress Company has acquired a right to cut timber during the additional year not actually contracted for, but covered by the option or privilege to continue. The contract gave to the Ocmulgee River Lumber Company such an option or privilege to extend the time for cutting for one year on certain terms. It contained no such words as assigns, successors, or the like. It was a right to exercise a choice or option by the company named, and by no other person. That company did not exercise the option. The present defendant seeks to do so, on the ground that it had purchased the timber from the Ocmulgee River Lumber Company prior to the date of the contract named, and that it tendered the money provided therein both to Vickers and Baker, to whom Vickers conveyed the land and timber after the date of the contract, and with notice of it. It was alleged that the Ocmulgee River Lumber Company conveyed to the defendant company after the former had acquired this contract right, but the proof is to the contrary. Had the defendant company the right to exercise the option, tender the money and demand an extension of time for cutting? The contract, as stated, contained no words of assignability—nothing referring to assigns. Had it done so, there was no attempt to assign it. If the defendant, therefore, acquired any right to exercise the option under it, such right must have arisen by operation of law. Two possible ways for this may be suggested: first, that the Ocmulgee River Lumber Company had previously sold and conveyed the timber to the defendant, and, when it acquired this new right, such right passed through it as a conduit to the defendant. Why? It may be mentioned that the conveyance to the defendant does not appear in the record to have been accompanied by a warranty. But suppose it was, what would be the result? The estate, interest, or rights appurtenant thereto or connected therewith which were covered by the conveyance and the warranty could not be adversely claimed by the grantor; and if such grantor afterward acquired title thereto, it would pass to and vest in his grantee. Civil Code, §3609. But there was nothing to prevent the grantor from purchasing an additional right or estate not adverse to or inconsistent with that which it granted. Thus one who buys and then con-

veys a life-estate, with warranty, is not prevented from afterward buying and holding the remainder. Nor was there anything appearing in this record which would prevent the grantor from purchasing a right after the end of the time fixed in his conveyance. The right would not pass to the defendant on the idea of estoppel or warranty.

Secondly, it is said that the contract provided for an extension of the original time, and that this was in the nature of a covenant running with the land. Had this contract been first made, and then the Ocmulgee River Lumber Company had conveyed to the defendant, the case might have been very different. Wilkerson v. Pettit, 47 Barb. 230. But when the contract was made, the lumber company had already sold and conveyed the timber, including the privilege of cutting in fifteen years. It had neither land nor timber to which to attach an appurtenance or a covenant. In order to have a covenant running with the land, there must be land in the hands of the covenantee, or conveyed by the covenantor, for it to run with. If there is no land to run with, there can be no covenant running with it. A conveyance to A. of a right not inconsistent with his previous grant to B. doth not, by operation of law, run with the land held by B. Whether one person might by express contract secure a covenant inuring to the use of and running with the land of another is not in question. No such contract was made. What we hold is that the law will not ordinarily by implication attach a covenant made with A. to land of B. Nor will this result from a recital in the contract that A. is the owner, when in fact he has previously conveyed it away.

11. It is contended that the plaintiff is estopped from denying that the defendant had acquired all of the rights which the Ocmulgee River Lumber Company would have had under the contract of May 21, 1905, because, on the hearing of an application for an ad interim injunction under the petition filed in Glynn county, one of the counsel for the present plaintiff stated to the court, in the presence of Baker and Vickers, that the Taylor-Cook Cypress Company would have a further year from and after June 23, 1906, upon the payment of $50 per lot, within which to cut and remove the timber. How this came to be said is not distinctly shown, but apparently it was in arguing the case to the presiding judge. It would greatly curtail the scope and freedom of argu-

ment if everything said by counsel in the heat of debate should be taken as a solemn admission in judicio which his client would be estopped from denying in every other case. If, in discussing a case, every suggestion or passing statement of each attorney touching what might be the effect of a deed, will, or other instrument would irrevocably fix that construction upon it, the courts might be much hampered in placing a proper judicial construction on the paper, and might sometimes be compelled to construe the same clause in very conflicting ways, none of which might be the correct way. The eloquence of the advocate may sometimes soar a little without being weighted down with the fear of estoppel. This statement does not seem to have been made to the defendant company, or intended as a basis of action by it. Nor does it appear that the company or its officers were misled by such statement or relied on it, or acted or failed to act on the faith of it. The general superintendent does state in his affidavit that "had deponent known at that time that it would be contended that said provision of said indenture was invalid, he could then, for defendant, have cut and removed most, if not all, of the said sawmill timber within the said original time." Perhaps he could have done so; but it does not appear that the company would have done so, or that it was misled or deceived into not doing so by any statement or action on the part of the adverse party. *Delaware Ins. Co.* v. *Pennsylvania Fire Ins. Co.*, 126 *Ga.* 380.

12. It seems that, on the hearing of the application for injunction in the case now before us, the only contentions made were those dealt with in the preceding parts of this opinion. Each side claimed the timber and asserted the right to cut it, and that interference with its use thereof by the adverse party would cause irreparable damage. Evidently the presiding judge based his refusal of an injunction on the ground that the defendant, not the plaintiff, owned the timber and was entitled to cut it, and not because the damage would not be irreparable, or because of contested issues of fact. In this view we think he erred, as will appear from what has already been said, and an injunction should have been granted. *McConnell Bros.* v. *Jones Naval Stores Co.*, 125 *Ga.* 377; *Huxford* v. *Southern Pine Co.*, 124 *Ga.* 181 (2).

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*