## Berman's Estate

*James Patterson*, for petitioners.

*Alexander B. Geary* and *Harry J. Alker, Jr.*, for respondent.

VAN RODEN, P. J., February 28, 1947.—The executors of the will of this decedent have presented a petition for a declaratory judgment decreeing a con-

struction of the provisions of a written lease entered into between decedent in his lifetime as lessee and respondent as lessor, and the nature of said lease as an asset of the estate, and the powers of the executors with respect thereto. The answer filed on behalf of respondent admits all the essential facts, but denies that the matter is a proper case for a declaratory judgment, and also vigorously opposes the construction of the lease contended for by petitioners.

The facts disclosed by the petition and answer and the evidence adduced at a hearing held on January 30, 1947, are that decedent, Marcus Berman, a member of the bar of this county, entered into a written agreement of lease with respondent under date of March 29, 1946, for an office located in the Professional Building, 7060 Garrett Road, Upper Darby, Pa., at a term rental of $4,500, for a term of five years commencing May 1, 1946, payable monthly in advance in payments of $75 each. The lease, which is on a printed form commonly used in this vicinity, contains the following provisions, inter alia:

"The lessee further agrees that the lessee will not assign this lease nor underlet the said premises or any part thereof or use or occupy the same other than as Office without the written consent of the Lessor first had and obtained."

"All rights and liabilities herein given to or imposed upon either of the parties hereto shall extend to the Heirs, Executors, Administrators, Successors and Assigns of such parties, and shall include the assignee of the Lessee for the benefit of creditors."

Decedent died on July 21, 1946. On December 7, 1946, his duly qualified executors entered into a written agreement with Stephen J. McEwen, a member of the bar, under the terms of which the executors agreed to sell to him the office equipment, furniture and law books of decedent, and to assign to him the said lease,

for a total consideration of $3,250, said agreement being, by its terms, contingent upon the right of the executors to assign the lease. Demand was made upon respondent to give his written consent to such assignment, and he has refused to do so, thereby raising the question whether the executors may properly assign the lease without lessor's written consent.

Before proceeding to a construction of the lease, the first question which must be determined by the court is whether a declaratory judgment will lie in this case. The Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, sec. 4, 12 PS §834, provides:

"Any person interested, as or through an executor, . . . creditor, . . . of the estate of a decedent, . . . may have a declaration of rights or legal relations in respect thereto— . . .

"(c) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings."

It is further provided in section 3 of said act, 12 PS §833:

"A contract may be construed either before or after there has been a breach thereof."

The Declaratory Judgments Act was amended by the Act of May 26, 1943, P. L. 645, 12 PS §836, to provide:

". . . the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, or an equitable remedy, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment or decree in any case where the other essentials to such relief are present; . . ."

In the instant case, there is undisputedly an actual controversy concerning the rights of the parties under the written lease which will lead to imminent and in-

evitable litigation. Although it is true that such rights might be determined in a different proceeding, that is, by an action to evict after an attempted assignment, this case has not yet reached that stage. It cannot reasonably be expected that a prospective assignee would be willing to accept the hazard of moving into the demised premises to be faced with a lawsuit over his right to possession. It certainly seems more sensible and in accord with the purpose of the declaratory judgment legislation to decide the respective rights in advance. It has been held by the Supreme Court that by virtue of the amendment to the act (May 26, 1943, supra), the fact that a controversy is susceptible to relief through some other remedy does not debar declaratory judgment relief where the case is not ripe for relief by way of such other remedy: Moore v. Moore, 344 Pa. 324 (1942).

A declaratory judgment or decree will serve to terminate the uncertainty or controversy now existing concerning this lease, and will be of great benefit to the executors in their determination of the disposition of an asset of the estate. At the same time, such declaratory judgment or decree will not cause respondent more trouble or vexation than a different form of proceeding involving the construction of the lease. Accordingly, the court holds that the petition presents a proper case for determination by way of declaratory judgment.

In considering the real substantive question here involved—whether the executors may assign this lease —it is readily apparent that certain anomalies are inherent in the situation. To permit the assignment will be tantamount to giving the personal representatives of decedent greater rights than he himself possessed under this lease. On the other hand, to prohibit the assignment would mean that the executors will be prevented from realizing any value from the lease,

yet at the same time the estate would be liable to lessor for the rent for the entire balance of the term: Speare Estate, 349 Pa. 76 (1944).

In balancing the equities, it does not appear that the proposed assignment inflicts any undue hardship upon lessor. At the time of the execution of the lease it was obviously the contemplation of the parties that the demised premises be occupied as a law office. Proposed assignee will merely continue such use. It might be noted that the latter is a well known and respected member of the bar, and it does not appear that he is in any way personally objectionable to lessor. All the rights of lessor under the lease will be maintained; he will have the security of the same personal property which was placed upon the premises by decedent, and he will be benefited by the personal financial responsibility of the assignee in addition to the liability of decedent's estate for the payment of the rental specified in the lease. On the other hand, if the executors are unable to assign the lease, they will be in the position of being obligated to pay rent for practically the entire term of the lease without any corresponding benefits. In addition, there will be an unwarranted loss to the estate in that the sale of the office furniture, library, and equipment is largely dependent upon the ability of the executors to assign the lease.

Turning from the equities to the legal aspect of the situation, this question apparently has not yet been passed upon by the appellate courts of this Commonwealth. It was, however, passed upon by the Orphans' Court of Philadelphia County in Coppel's Estate, 4 Phila. 378 (1861), where the court surcharged an executor for surrendering demised premises to the landlord even though the lease contained a clause forbidding lessee to underlet. It was held that the lease was an asset of the estate and should have been sold by the executor, who was not excused from performing

this duty by the clause forbidding such underletting. This decision was cited by the Supreme Court in Wartanian's Estate, 305 Pa. 333 (1931), where it was held that a leasehold survives as an asset of decedent's estate.

It is interesting and significant that a study of the cases decided in other jurisdictions reveals that the great weight of authority holds that the prohibition against assignment is not binding upon the personal representatives of lessee in the absence of *very special language* in the lease showing an intention on the part of the parties that the personal representatives shall be so bound. Francis et al. v. Ferguson, 246 N. Y. 516, 159 N. E. 416, 55 A. L. R. 982 (1927), has become a leading case on the subject and has been cited and quoted in text books and encyclopedias and in a great number of reported cases. The facts in that case are almost identical with those in the case at bar. A written agreement of lease contained two clauses substantially the same as the two clauses hereinabove quoted as contained in the lease between respondent and decedent in the instant case, to wit: (1) That the tenant shall not assign the agreement without the written consent of the landlord, and (2) that the covenants therein contained are binding on the legal representatives of the parties. In its opinion reversing the judgment of the lower court which refused a declaratory judgment in favor of lessee's personal representatives, the court of appeals stated:

"The judgment below proceeds upon a misconception of the effect of the final clause of the lease. It expresses merely what the law presumes in the absence of such a clause. 'It is a presumption of law, in the absence of express words, that the parties to a contract intend to bind not only themselves, but their personal representatives.' (*Kernochan* v. *Murray*, 111 N. Y. 306, 308.)

"An ordinary covenant against assignment does not bind the executors of the tenant and is not broken by a transfer of the leased premises by operation of law. (*Squire* v. *Learned*, 196 Mass. 134; *Gazlay* v. *Williams*, 210 U. S. 41.) The covenant may, however, be so drawn as expressly to prohibit such a transfer. To accomplish such a prohibition in case of a devolution to executors, its language must be 'very special.' (*Seers* v. *Hind*, 1 Ves. Jr. 294.) Such covenants are construed 'with the utmost jealousy.' (*Riggs* v. *Pursell*, 66 N. Y. 193, 201.) The use of general language, not specially related to the covenant against assignment—language which the law would imply as a term of the lease—is not the 'very special' prohibition which the cases require. In *Roe* v. *Harrison* (2 Term Rep. 425) the covenant was that neither the tenant nor his executors or administrators shall let. The restriction was explicit and no doubt could arise as to the meaning of the parties.

"On the death of the tenant, his property was transferred to the executors of his will by operation of law. They had capacity to take and to dispose of it. If it had been the intention of the parties that the personal representatives of the tenant should not dispose of the lease as assets of the testator, the provision against assignment should have been directed to the particular fact. The duty of executors requires them to administer and settle the estate with due diligence. To interfere with the ordinary course of administration and compel them to hold the leased premises until the expiration of the term, something more than casual general words without meaning should appear."

Francis et al. v. Ferguson, supra, was the subject of an annotation on the question in 55 A. L. R. 984, where the cases in the United States, England and Canada prior to that time are analyzed. All of them

recognize the general rule that "very special" language is necessary, but in some of them the language was held to be "very special". The case of Walker v. Wadley et al., 124 Ga. 275, 52 S. E. 904 (1905), cited by counsel for respondent, is not contrary to the general rule enunciated in Francis et al. v. Ferguson, supra, but merely holds that a provision in a lease that "party of the second part, his heirs, executors and administrators, shall not be at liberty to assign" constitutes such special language as prohibits assignment by the lessee's personal representatives. There is no such special language in the lease now under consideration.

In 32 Am. Jur. 302, §340, the general rule is stated as follows:

"The transfer of a leasehold estate, upon the death of the lessee, to his personal representative is by operation of law, and is in all cases admitted not to be a breach of a general covenant restricting the assignment of the leasehold estate. Also, according to the generally accepted view, a sale of the leasehold in the course of administration will not constitute a breach of a covenant restricting assignments, unless the covenant by its express terms is to be binding on the personal representatives of the lessee; but where the lease expressly makes the covenant binding on the personal representatives, any transfer by the representatives is a violation of the covenant."

It is a standing rule of construction that leases are to be construed most strongly against lessor and in favor of lessee: McClintock & Irvine Co. v. Aetna Explosives Co., 260 Pa. 191 (1918). It is similarly well settled that covenants against assignment and subletting are generally construed strictly against lessor: Hunter v. Johns et al., 275 Pa. 532 (1923). See also A. L. I. Restatement of Property §420.

Accordingly, although we have no Pennsylvania appellate court decision to guide us, the reasoning of the decisions of courts of respected authority above

discussed is sound, and this court holds that in the absence of special language to the contrary, the covenant in the instant lease against subletting does not apply to an assignment by lessee's executors, and that the said executors are under a duty to realize the value of the lease for the benefit of the estate, and are therefore lawfully entitled to sell or assign said lease without the written consent of lessor, providing said assignment does not violate the covenant restricting the demised premises to office use.

In accordance with the views expressed above, the court makes the following

### Decree

And now, to wit, February 28, 1947, upon consideration of the petition and answer, as well as testimony, oral argument and written briefs, it is hereby ordered, adjudged, and decreed as follows:

(a) The lease entered into on March 29, 1946, between A. George Sivaton and Marcus Berman is an asset of the estate of Marcus Berman, deceased.

(b) Petitioners, Sylvia G. Berman and James Patterson, executors of the estate of Marcus Brown, deceased, have the right to sell or assign the said lease dated March 29, 1946, between A. George Sivaton, lessor, and Marcus Berman, lessee, without the written consent of lessor, A. George Sivaton.

(c) The proposed sale and assignment of the lease by petitioners to Stephen J. McEwen, which contemplates the use of the demised premises as a law office, is not in violation of any of the covenants of the said lease.

(d) The cost of these proceedings shall be paid out of the estate of Marcus Berman, deceased.