#### IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

## AT TALBOTTON,

### JANUARY TERM, 1851.

Present—JOSEPH H. LUMPKIN,  
HIRAM WARNER,  } Judges.  
EUGENIUS A. NISBET,

No. 56.—EDWARD BROOKS, plaintiff in error, *vs.* JOHN C. ASH-BURN, defendant in error.

[1.] In an action of trespass for killing a slave, the defendant plead the general issue, and at the trial, gave in evidence, by way of justification, that he was acting as a patrolman, under the 44th section of the Act of 1770: *Held*, that the defendant was not sued for putting in execution any of the powers contained in the Act of 1770, and that so much of that Act as is *repugnant* to the Judiciary Act of 1799, which requires the defendant plainly, fully and distinctly to set forth his defence in writing, is repealed by the latter Act.

[2.] Where a witness who resides in the County in which the suit is pending, and was in attendance under a subpœna on the first day of the Court, and on that day his testimony was taken by commission, who, on the day of the trial, was unable to attend the Court, from bodily *indisposition*: *Held*, that the testimony could not be read as that of a witness who was unable to attend the Court from age or bodily *infirmity*, as contemplated by the Act of 1838.

VOL IX 38

[3.] Where an immediate act is done by the co-operation, or the *joint* act of two or more persons, they are all trespassers, and may be sued jointly or severally, and any one of them is liable for the injury done by all. To render one man liable, in trespass, for the acts of others, it must appear either that they acted in *concert*, or that the act of the party sought to be charged, ordinarily and naturally produced the acts of the others.

Trespass, in Macon Superior Court. Tried before Judge WARREN, September Term, 1850.

This was an action of trespass, brought by Edward Brooks against John C. Ashburn, for the value of a negro man. The plaintiff's case showed that Ashburn and one Drawhorn went to the house of one Lockett, on the Sabbath day, in search of a runaway negro of Drawhorn's. Seeing some negroes collected, they approached them, when the negroes ran in different directions. Ashburn pursued one, and Drawhorn another. Drawhorn struck the negro of plaintiff, and killed him. The value of the negro $800.

Plaintiff offered in evidence the interrogatories and answers of John McKenzie, an aged and infirm person, who had been subpœnaed, and was in attendance on the first day of the term. The commission was executed on that day. On the day of the trial, he was "unable to attend, from bodily indisposition." The witness was a regular minister of the gospel, and had attended his usual appointments previous to this last sickness.

The Court rejected the depositions, offering plaintiff a continuance. This decision was excepted to, and is assigned for error.

Defendant proved that he was commissioned as a Captain of Patrols, in the first of the year, 1846, (in which year the negro was killed,) which commission was to continue three months, or until the Captain resigned. The negro was killed within his patrol district.

To all of this testimony plaintiff objected, on the ground that defendant had pleaded only the general issue, and had not set forth in his answer the defence now relied on. The Court

overruled the objection, and this decision was excepted to, and is now assigned as error.

The Court charged the Jury as follows :

" If the evidence convinces you that Drawhorn and the defendant went voluntarily, and in concert, into the enclosure of Mr. Lockett, to rout slaves there seen by them, and, in the pursuit of this purpose, Drawhorn or Ashburn killed the negro, each and both are civilly liable to any party injured, for the injury done by either, and the value of the slave is the measure of damages.

" But if the entering the enclosure of Lockett by defendant and Drawhorn was not voluntary, but in the execution of patrol duty by Ashburn, the act of entering the enclosure was not a trespass, but lawful ; and, in the execution of this lawful act, any one of the parties who acts in excess of his duty, will be alone liable ; or, at most, any such as may act in excess of their duty would be liable for damages arising from the excessive act.   So that if it was in discharge of their duty, as patrolmen, they entered the enclosure, and Drawhorn went in pursuit in one direction, and the defendant in another direction, and Drawhorn killed the slave without excess of action by Ashburn, or by his direction, then Ashburn is not civilly liable, and plaintiff must look alone to the party killing his slave for the damages he has received.

" The Jury will discover from this, that much depends upon the fact, whether the defendant was acting at the time, *bona fide,* as a patrolman, in the agency he had in the matter under consideration.   If, at the time, he was acting, *bona fide,* as a patrolman, and was not present and countenancing the excessive act of producing death, then he is not liable to plaintiff for damages. But, on the contrary, if the defendant and Drawhorn were not acting as patrolmen, and this defence is an afterthought, then each is liable for the act of the other, and Ashburn is liable for the act of Drawhorn, and (if Drawhorn killed the negro) liable for the value of the slave.   The Jury will judge of the evidence, and apply it to the principles of law laid down, and find, ac-

cording to the conviction which the evidence produces on your minds."

To all of which instructions, or so much as tended to excuse the defendant from liability as a co-trespasser, on the ground of being a patrolman, plaintiff excepted, and has assigned error thereon.

These several grounds of error were argued before the Supreme Court.

S. Miller and Geo. R. Hunter, for plaintiff in error.

L. S. Smith, for defendant in error.

*By the Court.*—Warner, J. delivering the opinion.

[1:] The first ground of error taken in the record to the judgment of the Court below, which we shall consider, is the admission of the evidence offered by the defendant, as a justification under the Patrol Laws of this State. This defence was not specially set forth in the defendant's answer, he having only plead the *general issue* to the plaintiff's action. The question is, whether this evidence of *justification* was admissible, under the plea of the *general issue?*

The defendant relies on the 44th section of the Act of 1770, relating to slaves, patrols, and free persons of color. *Prince,* 786. That section of the Act declares, that " if any person shall be, at any time, sued for putting in execution any of the powers contained in this Act, such person shall and may plead the general issue, and give the special matter and this Act in evidence," &c.

This action is a common action of trespass, brought by the plaintiff against the defendant. The defendant is not sued for putting in execution any of the *powers contained in the Act of* 1770. It is true, he offered evidence, on the trial, to justify himself, under the provisions of that Act; but such evidence was an independent matter of defence for him, which he ought specially to

have set forth in his answer, as provided by the 9th section of the Judiciary Act of 1799. *Prince*, 421.

The Judiciary Act of 1799 regulates the pleadings in all *civil* suits, cognizable in the Superior and Inferior Courts, on the Common Law side of said Courts, respectively. *Prince*, 420. The plaintiff's action was a *civil suit*, to recover damages for the injury done to his property ; and if the 44th section of the Act of 1770 shall be considered as *repugnant* to the Act of 1799, so far as the pleadings of the defendant are concerned, then the Act of 1799 repeals the Act of 1770 to that extent. The same reason exists in this case why the defendant should "plainly, fully and distinctly set forth the cause of his defence," to prevent surprise at the trial, on the part of the plaintiff, as in any other *civil* suit which may be instituted in the Court. *Johnson et al. vs. Ballingall*, 1 *Kelly*, 68.

This ground of error was well taken, and must be sustained.

[2.] The next ground of error assigned upon the record is, that the Court rejected the answers of John McKenzie, whose testimony had been taken by commission, under the provisions of the Act of 1838. That Act provides, among other things, that any witness whom the plaintiff or defendant may deem material in any cause pending in any of the Courts of Law and Equity in this State, who, from *age or other bodily infirmity*, may be unable to attend Court, it shall and may be lawful to examine such witness by commission, in the manner prescribed by law, in case where witnesses reside out of the County. *Hotchkiss*, 585. The facts disclosed by the record do not, in our judgment, bring this witness within that provision of the Act of 1838, which relates to those persons who, from *age or other bodily infirmity*, are unable to attend the Court. This witness resided in the County, was subpœnaed and attended the Court, in person, on the first day of the term, on which day his answers were taken ; but on the day of the trial, the record states, he was unable to attend, from *bodily indisposition*, not from age or bodily *infirmity*. It also appears that the witness was a minister of the gospel, and attended his usual appointments prior to this last sickness. Taking the record as true, this witness was attending the Court un-

der a subpœna, like any other witness who lived in the County in which the suit was pending, but was taken sick during the term of the Court, and was not able to be present on the day of trial on that account.

The plaintiff was undoubtedly entitled to have had a continuance of his cause, which the Court offered to grant him, but the testimony of the witness, taken by commission, under the peculiar facts of this case, we think, was properly rejected by the Court. It is always desirable to have the witness personally present in Court, when it can be done, and we are unwilling to create *exceptions* in favor of the introduction of testimony taken by commission, beyond those which the Legislature have thought proper to create, and the party offering such testimony must clearly bring it within the provisions of the Statutes which authorize it. See *Craft vs. Jackson*, 4 *Geo. Rep.* 363.

[3.] The third and last objection taken to the judgment of the Court below, is its charge to the Jury.

Ashburn was alone sued in this action, and the effort of the plaintiff, on the trial, was to make him a *joint* trespasser with Drawhorn, who killed the slave. Ashburn justified as a patrolman. It appears some negroes were routed in the yard of Lockett; Ashburn pursued one in one direction, and Drawhorn pursued the plaintiff's negro in another direction, and committed the trespass.

Where an immediate act is done, by the co-operation or the *joint* act of two or more persons, they are all trespassers, and may be sued jointly or severally, and any one of them is liable for the injury done by all. To render one man liable, in trespass, for the acts of others, it must appear either that they acted in *concert*, or that the act of the party sought to be charged, ordinarily and *naturally* produced the acts of the others. *Guile vs. Swan*, 19 *John. Rep.* 382. If Ashburn, as a patrolman, entered the yard of Lockett, in company with Drawhorn, to disperse the slaves, and did not exceed his authority by any act done by him, he is not responsible for the excess of authority on the part of Drawhorn, unless he acted in *concert* with Drawhorn, either directly or indirectly, in the commission of the acts which

constitute such excess of authority. Did the act of Ashburn entering the enclosure where the negroes were, as a patrolman, and pursuing one negro, which was not injured, in one direction, *naturally* produce the act of trespass committed by Drawhorn upon the plaintiff's negro, who was pursued in a different direction? In short, did Ashburn, either directly or indirectly, act in concert with or contribute to the act alleged as an excess of authority on the part of Drawhorn? If he did, then, in the eye of the law, he is a co-trespasser; if he did not, then he is not liable to the plaintiff as such.

We are of the opinion that the Court gave the law applicable to the facts of this case, in charge to the Jury, substantially correct, and find no ground for a reversal of the judgment in that assignment of error. The judgment of the Court below must, however, be reversed, on the first ground considered, and it is so adjudged.