# BURNS *v.* HORKAN.

1. Where three persons were sued as joint trespassers, and two of them filed separate demurrers to the petition, each of which was sustained by a separate order of the court, wherein the case was dismissed as to the particular demurrant, it was sufficient, in a bill of exceptions complaining of these rulings, to assign error thereon as follows: "each of which orders and judgment plaintiff excepted to, and now excepts, and assigns the same as error." This was equivalent to a separate assignment of error upon each order, or judgment, complained of, and was sufficient as to each.

2. The judgments sustaining these demurrers, being a final disposition of the joint action brought by the plaintiff, could be brought to the Supreme Court for review while the case was still pending in the court below against the other defendant.

3. One who procures or assists in the commission of a trespass, or does an act which ordinarily and naturally induces its commission, is liable therefor as the actual perpetrator.

4. The action, being for trespass, was not barred by the statute of limitations, as it was brought within four years from the commission of the acts complained of.

5. In an action for trespass upon realty, it is not necessary for the plaintiff to set forth in his petition, or attach thereto, an abstract of the title upon which he relies.

6. One who commits a trespass for and in behalf of a corporation is himself liable therefor.

Submitted March 3,—Decided August 9, 1906.

Trespass. Before Judge Mitchell. Colquitt superior court. April term, 1905.

Edward Burns brought an action against George A. Horkan, G. F. Taylor, and C. E. Martindale, to recover damages alleged to have been sustained by him "by a willful trespass in cutting the sawmill timber on" a described lot of land in Colquitt county, "and removing and disposing of said timber." The petition also made the following allegations: The timber at the time of such cutting and removing was the right and property of the petitioner. In 1896 he purchased all of the timber on this lot, suitable for sawmill purposes, from J. L. Carman, who derived title from W. C. Vereen, who had a good and valid title to the land. On or about February 8, 1901, defendants Taylor and Martindale, "with perhaps others, unknown to petitioner, were conducting a sawmill business in Colquitt county, under a charter, as the Standard Sawmill Company, but . . Taylor and Martindale were the leading and controlling persons and managing officers of said concern, and . . since that time they have ceased to do business as such corporation, the same having been dissolved as petitioner is informed," and Taylor is conducting business on his own account at the old site of the company's business, and Martindale in Thomas county, Georgia. "About the date above stated the said Horkan, in furtherance of a scheme previously planned, did combine and confederate with the said Taylor and Martindale, as the controlling persons of said corporation, to take said sawmill timber on said lot . . , the same being then and there the property of petitioner, without lawful warrant or authority, and in doing so acted as willful trespassers." In furtherance of this scheme Horkan executed "a paper to said company, in which he pretended to convey to it the sawmill timber on said lot of land." About "said date in February, 1901, and afterwards during that year, the said defendants, by their servants, agents, and employees, acting on said pretended conveyance, did enter upon and proceed to cut and remove the said sawmill timber from said lot of land;" and by so doing injured and damaged the petitioner in the sum of $20,000, which sum was the value of the timber, cut into lumber, at the time it was cut and disposed of, without deduction for defendant's labor and expense. During the year 1901 the defendants cut from said lot, of the sawmill timber thereon, which was the property of the petitioner, "five hundred

thousand feet of unusually large and valuable sticks of timber worth at the mills where cut the sum of fifteen dollars per thousand feet, making a total value of seventy-five hundred dollars; . . the cost of cutting the same was not exceeding fifteen hundred dollars, so that the net value of this lot of said timber of plaintiff's cut by defendants, after deducting the value the defendants added by cutting it, was six thousand dollars at the time it was cut, and at the time of bringing this suit. Besides "this lot of very large timber, the said defendants did about the same time and afterwards cut from said lot other timber and convert the same into lumber, the value of which, after deducting the value of the labor put upon it by defendants, was, at the time it was cut, and at the time of bringing this suit, at least the sum of six thousand dollars." So, "even if defendants were unintentional and innocent trespassers, they have damaged and become liable to petitioner in the sum of twelve thousand dollars, by reason of the cutting and taking away of petitioner's said timber from said lot of land." ·

Horkan and Taylor filed separate demurrers to the petition. Each demurrer alleged that the petition showed no cause of action against the demurrant; that it showed that he was not a party to any of the acts complained of, and failed to show that he was ever in possession of any of the timber in question, or lumber derived therefrom. Horkan's demurrer was also upon the grounds, that no sufficient abstract of title was set out in the petition or attached thereto; and that the suit was barred by the statute of limitations, having been brought more than two years after the acts complained of. Pending the demurrers, the plaintiff amended his petition, by alleging "that said timber was standing timber growing upon said land." The court sustained each of these demurrers and dismissed the petition as to each of these defendants. The plaintiff excepted.

*J. H. Merrill,* for plaintiff. *Shipp & Kline,* for defendants.

COBB, P. J. 1. When the case was called here, defendant in error, Horkan, made a motion to dismiss the writ of error. The grounds of this motion were: There is no sufficient assignment of error as against him. There is no separate assignment of error on the order sustaining his demurrer. The plaintiff in one assignment attempts to assign error on two separate and distinct orders of the judge below, one being the order sustaining the demurrer of Taylor and the other the order sustaining the demurrer of Horkan.

There has been no final disposition of the case in the court below, it being still pending there against Martindale. Taylor also made a motion to dismiss the writ of error, based upon the same grounds. These motions are without merit. Error is assigned in the bill of exceptions as follows: "After the allowance of the amendment to the petition, the court heard the demurrers and passed an order sustaining the entire demurrer of each of the defendants and dismissing the case; each of which orders and judgment plaintiff excepted to, and now excepts, and assigns the same as error." The court passed two orders, one sustaining the demurrer of Horkan and the other sustaining the demurrer of Taylor, and, as we have just seen, the assignment of error is, "each of which orders and judgment plaintiff excepted to, and now excepts, and assigns the same as error." This is equivalent to a separate assignment of error upon each of these orders, and is a sufficient assignment as to each.

2. The plaintiff sued Horkan, Taylor, and Martindale as joint trespassers; and when the court sustained the demurrers of Horkan and Taylor and dismissed the suit as to them, there was a final disposition of the case as brought by the plaintiff. His joint action against three was transformed into a separate action against one; and if he submitted to the rulings of the court, the joint action which he brought would be forever at an end, and he could only proceed against the remaining defendant. The judgments sustaining the demurrers and dismissing the case as to two of the defendants, being thus final in their nature, could be brought to the Supreme Court while the case was still pending in the court below against the other defendant. *McGaughey* v. *Latham,* 63 *Ga.* 67; *Kollock* v. *Webb,* 113 *Ga.* 762; *Ellis* v. *Almand,* 115 *Ga.* 333; *Johnson* v. *Porter,* Ib. 401; *Holland* v. *Saul,* Ib. 511. And failure upon the part of the plaintiff to sue out a direct bill of exceptions, within the time allowed by law for suing out a final bill of exceptions, would place him in the position of abandoning his joint action and electing to proceed only against the defendant as to whom the case had not been dismissed. *Ellis* v. *Almand; Holland* v. *Saul,* supra.

3. There was a cause of action set forth against Horkan. The contention of his counsel, that he can not be liable in an action of trespass, unless he "committed the trespass himself or was in possession of the logs or lumber subsequently to the trespass," is not sound. According to the allegations of the petition, Horkan com-

bined and confederated with the other two defendants, in further-
ance of a scheme previously planned, to take the growing timber be-
longing to the plaintiff, and, in pursuance of the scheme, executed
a paper to the corporation managed and controlled by them, "in
which he pretended to convey to it the sawmill timber on said lot
of land." Taking these allegations to be true, Horkan, although he
may not have participated in the physical acts constituting the tres-
pass, either in person or through agents or employees of his, was as
much a trespasser as he would have been if he had done so. "In
all cases he who maliciously procures an injury to be done to an-
other, whether it be an actionable wrong or a breach of contract, is
a joint wrong-doer, and may be sued either alone or jointly with
the actor." Civil Code, § 3873; *Graham* v. *Dahlonega Gold Min-
ing Co.*, 71 *Ga.* 297. One who procures or assists in the commis-
sion of a trespass is equally liable with the actual perpetrator for
the damages which the owner of the property sustains thereby. As
was said by the court in *Markham* v. *Brown*, 37 *Ga.* 277, 281,
"This action may be maintained, not only against the party who
did the act, but against all who *direct* or *assist* in the commission
of it. 2d Leigh's Nisi Prius, 1443. Thus a party may be sued in
trespass in respect of his *previous consent, or request,* that the tres-
pass may be done, as if A command or request B to beat or im-
press C, or to take his goods, or to *commit a trespass on his land,*
and B do it, this action lies as well against A as against B. 1st
Chitty's Pleading, 181. 7 Comyn's Dig. top page 515, letter C."
"To render one man liable in trespass for the acts of others, it must
appear either that they acted in concert, or that the act of the party
sought to be charged ordinarily and naturally produced the acts of
the others." *Brooks* v. *Ashburn*, 9 *Ga.* 297. It was held in Kolb
v. Bankhead, 18 Tex. 228, that, "Where A, professing to sell tim-
ber trees from his own land, points out to the purchaser timber
trees upon the land of another, which are cut and carried off by the
purchaser, A is responsible in an action for damages, in the same
manner as if he had himself cut and carried off the timber." To
the same effect is Dreyer *v.* Ming, 23 Mo. 434, where it was held
that where one claims to own land belonging to another and sells
the timber thereon to a third person, who cuts and removes the
same, he may be held liable to the owner, as a principal trespasser,
for the timber cut and carried away. In the opinion Scott, J.,

said: "The defendant, by undertaking to dispose of the plaintiff's property, was the moving cause of the injury sustained by the plaintiff." He said the case was "similar to that of Wall & Wall *v.* Osborne, (12 Wend. 39,) where a party sold a mill standing on the lot of his neighbor, and appointed a day for the purchaser to take it away, promising to aid him in its removal, if it was necessary, and the mill was subsequently taken down and removed by the purchaser; and it was held that the vendor was liable to an action of trespass, although there was no proof of his being present or aiding in the removal of the building."

4. The other grounds of Horkan's demurrer are equally without merit, and they are not urged in the brief of counsel for defendants in error. The question of the statute of limitations seems to have been raised upon the idea that, under the facts alleged, Horkan could not be held liable as a trespasser, and that if the plaintiff had any cause of action at all against him, it was barred in two years. But in the brief of his counsel it is contended that the action is clearly one of trespass, and as such they admit that it was brought within the time prescribed by the statute for the bringing of such an action, which is four years.

5. There is no statute which requires that in an action to recover damages for a trespass upon realty the plaintiff must set forth the title upon which he relies (*Gillis* v. *Hilton & Dodge Lumber Company,* 113 *Ga.* 622); and this was not a requirement of the common law. The gist of the action at common law was the injury to the possession, and it was sufficient if the declaration showed a possessory title; and in order for the plaintiff to recover he had to show that he was in possession at the time of the acts complained of. Our Civil Code (§3877) allows an action of trespass to be brought by the true owner, even though he was not in possession at the time of the alleged trespass, and may never have been in possession, if no one else was in possession under the same title with him. *Markham* v. *Brown,* 37 *Ga.* 277; *Yahoola Gold Mining Co.* v. *Irby,* 40 *Ga.* 479; *Atlantic Railroad Co.* v. *Fuller,* 48 *Ga.* 423. But it has not changed the form of the action in such cases, nor required the plaintiff to set forth the title upon which he relies. If the plaintiff was not in possession, he can not recover without proving that he was the true owner, but he is not obliged to disclose in his petition the evidence upon which he relies to show title. There is no such

requirement in an action of trespass quare clausum fregit. Dorcey v. Patterson, 7 Iowa, 420; Ehrmentrout v. McMahon, 78 Wis. 138, 47 N. W. 305. See also, Leihy v. Ashland Lumber Co., 49 Wis. 165, 5 N. W. 305; Van Winkle v. Curtis, 3 N. J. Eq. 422.

6. If the allegations of the petition were true, Taylor and Martindale were liable to the plaintiff as trespassers. They could not shield themselves behind the corporation for which they were acting and of which they were the controlling spirits. They were not sued as stockholders of the corporation, but as individual trespassers. As we have seen, the rule is well settled that all who assist or take part in the commission of a trespass of this character, or who procure it to be done, are liable therefor. The servant is liable as well as the master; the agent as well as the principal, and the officers acting for a private corporation as well as the corporation. It was held in *Stafford* v. *Mercer*, 42 *Ga.* 556, that where a warehouseman had lawfully received cotton in store for another, and his clerk, under his direction, sold it without the consent or authority of the owner, an action of trespass vi et armis would not lie in behalf of the owner against the clerk. But this was held because the cotton "came legally and properly into the possession of the warehouseman," and in selling it, under the direction of the warehouseman, the clerk was "but the servant of his principal." In the opinion McCay, J., said: "If the taking was a trespass, all concerned are liable, but if it [the cotton] was legitimately there, and was sold without authority by the warehouseman, or by his direction, he and not the clerk is responsible."

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*