## CHATTAHOOCHEE BRICK COMPANY *v.* GOINGS.

1. Under the act of December 21, 1897 (Acts 1897, p. 76), in regard to the leasing of convicts, the Prison Commission were given full control and management of the State convicts, and power to appoint such officers, guards, and physicians as might be necessary. By virtue of leases made by the Prison Commission the physical custody of the convicts was not delivered into the hands of the lessees, but the labor of the convicts was contracted for.

2. Where from the whole petition it is apparent that a person serving a term as a felon was caused to work for another as a lessee of convicts under the act of 1897, and no special facts are alleged showing that he was not being worked under the control of a guard or warden, mere general allegations to the effect that he was in the custody and control of the lessee do not serve to change the legal relation, fixed by the act of the legislature, of the convict toward the lessee and the guard or warden.

3. An allegation that a lessee paid large sums of money to the deputy warden of the State, who was located at the place where the convicts were worked, was not sufficient to show that the warden ceased to be the appointee of the Prison Commission, and became the agent or employee of the lessee.

4. After the term for which a convict was sentenced had expired, there was no authority of law for continuing to hold him in custody and compelling him to work for a lessee. Such acts were not rendered legal because the physical custody of the convict was in a guard or warden appointed by the Prison Commission.

5. A lessee of convict labor, who contracted for the services of a number of them in gross, was not bound at his peril to investigate the legality of the conviction or detention of each convict who was brought to work for him by the prison warden or guard. But if a convict was unlawfully detained beyond the term of his sentence, and compelled to labor for the lessee, this was a tort; and if the lessee, with knowledge of the facts, "wilfully, intentionally, and fraudulently" participated in the wrongful detention, he would be liable, although the physical custody of convicts was in the warden or guard.

6. Where a person was convicted of two felonies, and served his sentences concurrently, so that he was entitled to be released upon the termination of the longer sentence, he could not have such term reduced on account of good conduct, under the Penal Code, § 1173, by calculating an allowance for good conduct on each of the two sentences and deducting the aggregate time from the longer sentence.

DECEMBER 16, 1910.

Complaint. Before Judge Bell. Fulton superior court. September 29, 1909.

Timothy Goings brought suit against the Chattahoochee Brick Company. The allegations of his petition made, in brief, the following case: On January 23, 1901, he was sentenced to a term of

34

three years imprisonment at hard manual labor. Five days later he was sentenced to a similar term of two years. Each sentence specified that the period was to be computed from his delivery into custody. His sentences were therefore to be served concurrently, and not consecutively. He was taken into custody on March 16, 1901, and the sentences began to run from that time. After working at divers places for the first year, he began his second year of confinement at hard labor at the convict camp of the Chattahoochee Brick Company, a lessee of convicts. He remained there continuously at work until April 1, 1904, when he was removed and delivered to the County of Fulton to be employed on its public highway. While in the service of the company, he sued out a writ of habeas corpus, and service thereof was perfected. Afterwards, by amendment, Fulton County and the State Prison Commission were joined as parties defendant. At the hearing the brick company did not appear or make answer, but counsel for the other defendants conceded that the prisoner should be released, which was done. Under section 1173 of the Penal Code he was entitled to a reduction of his sentences, on account of good conduct, to the extent of eleven and a half months. "Defendant, having notice and actual knowledge, in advance, of the termination of his dual sentence, wilfully, wrongfully, fraudulently, and intentionally deprived him of his liberty, confined him at excessive labor, overtaxing his strength and endurance," etc. There were allegations of being shackled with felons, lack of proper clothing and food, the value of his services while illegally held, and the expense of counsel in prosecuting the writ of habeas corpus, etc. General and special damages were sought to be recovered. An amendment was allowed, over objection, to the effect that wherever the original petition alleged the defendant's possession, custody, control, and authority over him, it was by the defendant itself, and not by the Prison Commission of Georgia; that the defendant paid large sums of money to the deputy warden of the State who was located at its works, "and thus the defendant made said deputy warden its agent and employee, and not the employee of the State. This act on the part of the defendant was illegal and fraudulent. Defendant also, through its said alleged deputy warden and through its other employee, exercised authority over the plaintiff, taking and withdrawing him from the control of the State, all of which was illegal."

The defendant demurred to the petition, on the ground that, taken as a whole, it showed that the plaintiff was a penitentiary convict; that, under the law, the State had the custody of the person of the plaintiff, and only hired his labor to the defendant; that the State through its officers and agents had entire control of him and was responsible for his discharge as well as his custody; that there was no allegation that the State had abrogated its custody of the plaintiff, or that the defendant had wrongfully taken possession of him in such manner as to render it responsible for his imprisonment beyond the term of his sentence. The demurrer was overruled, except as to certain special grounds relating to particular paragraphs in the petition. The defendant excepted, and assigned error on the allowance of the amendment and the overruling of the demurrer.

*Wimbish & Ellis, Edgar Watkins,* and *W. Carroll Latimer,* for plaintiff in error.

*H. H. Walker* and *Burton Smith,* contra.

LUMPKIN, J. (After stating the facts.) Two leading questions are involved: (1) Was the plaintiff unlawfully restrained of his liberty and compelled to work at the brick yard and "convict camp" of the defendant? (2) If so, was the defendant liable therefor? Under the act of March 3, 1874 (Acts 1874, p. 26), and the act of February 25, 1876 (Acts 1876, p. 40), the State convicts were leased or farmed out. The persons to whom the hiring of the convicts was made were termed "lessees." The possession and the custody of the convicts were in the lessees, certain power of regulation, supervision, and control being reserved by the State. The lessees appointed and paid the guards. The only restriction in their selection appears to have been that the lessees should not use as guards any of the convicts, or place any of them in positions of trust and control over other convicts. Penal Code, § 1160. By the sixth section of the act of 1874, it was expressly declared that it should be the duty of all lessees, and all persons having charge or control of any convicts, to discharge a convict immediately upon the expiration of the term for which he or she might have been convicted and sentenced; and it was made a misdemeanor to wilfully violate the provisions of that section. Under this system of leasing or hiring, cases arose in which convicts were injured by the fault of the lessees or of the guards appointed and

paid by them, and in some of them the lessee was held liable. *Dade Coal Co.* v. *Haslett,* 83 *Ga.* 549 (10 S. E. 435); *Chattahoochee Brick Co.* v. *Braswell,* 92 *Ga.* 631 (18 S. E. 1015); *Boswell* v. *Barnhart,* 96 *Ga.* 521 (23 S. E. 414).

In 1897, when the leases then in force were nearing expiration, another act was passed on the subject of the penitentiary system, including the keeping and hiring of convicts, for terms not longer than five years. Acts 1897, p. 71. This has been amended (Acts 1903, p. 65), and still later the leasing system has been abolished (Acts 1908, p. 1119); but the case before us is not affected by the last-mentioned acts, the matter involved having taken place before their passage. Under the new system inaugurated by the act of 1897, the Prison Commission was created, which "shall have complete management and control of the State convicts, shall regulate the hours of their labor, the manner and extent of their punishment, the variety, quality, and quantity of their food, the kind and character of their clothing, and shall make such other rules and regulations as will insure their safe-keeping and proper care; and to appoint such officers, guards, and physicians as may be necessary; provided that the guards so appointed shall not receive a greater sum than $25 each per month." With certain exceptions, the commission was directed to advertise for bids for the hire of the convicts, and to award them to the bidder or bidders "who offer the highest and best price for the labor," but with discretionary powers in the commission as to rejecting bids and making other contracts. The State was to furnish all guards and physicians, the hirer to furnish transportation, maintenance, medicine, clothing and all other necessaries, "and pay quarterly for the annual labor of the convicts at an agreed price per annum per capita." In the contracts of hiring no bids for less than fifty nor more than 500 convicts were to be received.

Construing the act as a whole, by the leases made under it the State did not deliver the physical custody of the convicts into the hands of the lessees, but their labor was contracted for, and the wardens, guards, etc., had, in contemplation of law, charge of the convicts employed in the work of the lessees. *Mason* v. *Hamby & Toomer,* 6 *Ga. App.* 131 (64 S. E. 569); *Hamby* v. *Georgia Iron & Coal Co.,* 127 *Ga.* 792, 797 (56 S. E. 1033). So long as a person was legally a convict, he could not lawfully be delivered into

the physical custody of a private individual or corporation, so as to release or destroy the custody of the guards or warden appointed by the Prison Commission. While the petition of the plaintiff does not in terms say that the defendant was a lessee or hirer of convict labor under the act of 1897, and that the plaintiff was placed at work for the defendant as such, it is clearly to be derived from the. allegations of the petition that this was the fact. The conviction of the plaintiff, his sentences to imprisonment and hard labor, and the fact that he was working them out concurrently were set forth. The place where he was at work was designated as the "defendant's plant and convict camp," and in one place reference was made to the "State's penal service." He claimed a reduction of the time for which he had been sentenced, on account of good conduct. There was no allegation that his custody had been taken from the warden or guard appointed by the. Prison Commission, or that he was worked differently from any other convict at the place where he was confined. Mere general allegations, therefore, that the plaintiff was in the custody, possession, and control of the defendant during the term of his sentence do not suffice to change the fact that, under the act of 1897, the physical custody which guards and wardens appointed by the Prison Commission have of convicts is not of itself to be treated as in law the possession of such convicts by the lessee. If there were any facts or circumstances which would show that in a particular case a convict was not in the custody of such guards or wardens, they should be alleged.

The allegation in the amendment, that the defendant paid large sums of money to the deputy warden of the State who was located at its works, and thus the defendant made said deputy warden its agent and employee and not the employee of the State, was not sufficient to show that such was the legal result of the payments. The law provided for the appointment of guards by the State through its Prison Commission. Payments of money by the lessees to a warden might have been improper, and under certain circumstances might have amounted to bribery or corruption. But the mere allegation that the lessee paid sums of money to the warden does not suffice to show that there was any corruption or bribery in connection with the plaintiff, or that it had anything to do with his being held beyond the term of his conviction. Nor did

the statement in the amendment that the defendant, through the warden "and through its other employee, exercised authority over the plaintiff, taking and withdrawing him from the control of the State," allege any fact to show that, during the term for which he was sentenced, the plaintiff was in any situation different from that of other convicts whose labor was hired to a lessee under the act of 1897. We conclude that the petition practically showed that the plaintiff was in the custody of guards or wardens appointed by the Prison Commission, or at least that he was serving a sentence at a convict camp, and did not negative the fact that there were guards and wardens duly appointed as by law provided, and that they had the custody of the plaintiff.

While this is true, when the time for which a convict has been sentenced has expired he is in law no longer a convict, and can not be lawfully held as such. The officers of the State are the proper persons to have the custody of convicts; but the retention in custody of a person who has been convicted, after the term fixed in his sentence has expired, is not lawful. The mere fact that an officer of the State has the physical custody of him does not make that custody legal. We are not discussing the question as to who may be at fault, or the question of legal liability on the part of any officer of the State. But a person whose sentence has expired, and against whom there is no other outstanding sentence or warrant, is entitled to his freedom, and to deprive him of it is illegal. Without referring for the present to the claim of a time allowance for good conduct, the petition alleged that the plaintiff was sentenced for terms of two and three years respectively, running concurrently; that they began on March 16, 1901, and the longest would therefore expire three years thereafter; and that he was kept in custody and at work for the defendant until April 1, 1904. Taking this as true, which must be done on demurrer, he was held at hard labor for more than three years, and after that time was compelled to work for the defendant. It was said in *Fortson* v. *Elbert County,* 117 *Ga.* 149, that if a defendant is found guilty of more than one offense, and the imprisonment under one sentence is to commence on the expiration of the other, the sentences must so state; else the two punishments will be executed concurrently, and the defendant will be entitled to his discharge on the expiration of the longer term. In *Hightower* v. *Hollis,* 121 *Ga.* 159 (48 S. E. 969), it was

said that this principle had no application in a case where the sentences were imposed by different courts. In the case now before us the petition did not distinctly allege that the sentences were imposed by the same court, but no point was made on that ground; and it was alleged that the plaintiff was discharged from custody by writ of habeas corpus. It was also alleged that the defendant had notice and actual knowledge of the termination of the plaintiff's sentence, but "wilfully, wrongfully, fraudulently, and intentionally" deprived him of his liberty, and confined him at excessive labor thereafter. If the detention of the plaintiff beyond the term of his sentence was an illegal deprivation of his liberty, and he was compelled to work for the defendant, and the latter, knowing that his sentences had terminated and that his detention was illegal, continued to furnish maintenance, to receive the benefit of such wrong, to have the plaintiff unlawfully compelled to work for it and to take part therein, it was a participant in the wrong done and was a joint tort-feasor with the principal wrong-doer. "In all cases he who maliciously procures an injury to be done to another, whether it be an actionable wrong or a breach of contract, is a joint wrong-doer, and may be sued either alone or jointly with the actor." Civil Code, §§ 3873, 3853. "One who aids, abets, or incites, or encourages or directs, by conduct or words, in the perpetration of a trespass, is liable equally with actual trespassers." 28 Am. & 'Eng. Enc. Law (2d ed.) 566, 567. In 2 Add. Torts (Wood's ed.), § 1321, it is said: "Whoever wilfully assists in the doing of an unlawful act becomes answerable for all the consequences of such act." The mere fact that the act may be committed under the order of an executive officer does not make such act lawful, or prevent the parties who knowingly participate in the tort from being liable. In *McDougald* v. *Dougherty*, 12 *Ga.* 613, it was held that "A levy of an execution against A, upon property in the possession of B, is a trespass; and the plaintiff in execution, the attorney for the plaintiff in execution who orders the levy, and the officer who makes it are all liable as trespassers, unless they justify by showing that the property belonged to the defendant in execution." In *Bodega* v. *Perkerson*, 60 *Ga.* 516, a sheriff levied an attachment on goods in the hands of a common carrier. One claiming to be the true owner, and who was not the defendant in attachment, demanded them of the sheriff. He de-

clined to deliver possession unless a claim was filed. The owner refused to do this, and brought suit against the sheriff. It was held that this could be done. In Raleigh *v.* Goschen, L. R. 1 Ch. 73, 77, Romer, J., said: "It appears to me, if any person commits a trespass (I use the word advisedly as meaning a wrongful act or one not justifiable), he cannot escape liability for the offense, he cannot prevent himself being sued, merely because he acted in obedience to the orders of the executive government, or of any officer of state." See also Mitchell *v.* Harmony, 13 How. (U. S.) 115 (14 L. ed. 75) ; Marshall *v.* Eggleston, 82 Ill. App. 52; Hazen *v.* Wight, 87 Me. 233 (32 Atl. 887) ; Palmer *v.* Shenkle, 50 Mo. App. 571; Brown *v.* Howard, 14 Johns. (N. Y.) 119 ; *Duckett* v. *State,* 93 *Ga.* 415 (21 S. E. 73) ; 1 Add. Torts (Wood's ed.), § 422, and note; Clerk & Lindsell on Torts, 63. "While the word trespass generally involves the idea of force, yet in its broadest sense it comprehends any misfeasance, transgression, or offense which damages another's person, health, reputation, or property," and in that sense it is employed in the clause of the constitution of this State in reference to jurisdiction of suits against "joint trespassers." *Cox* v. *Strickland,* 120 *Ga.* 106 (47 S. E. 912). In the case before us it was alleged, that the plaintiff was wrongfully restrained of his liberty and compelled to work for the defendant when he was no longer in law a convict; that his detention was adjudged to be unlawful, and he was discharged on writ of habeas corpus ; and that defendant, knowing of the wrong, wilfully and intentionally participated in it and received a benefit from it. Our Civil Code, § 3076, declares that for "every injury done by another to person or property the law gives a right to recover, and a remedy to enforce it." And again, section 4929 declares that "for every right there shall be a remedy, and every court having jurisdiction of the one may, if necessary, frame the other." These declarations would sound as hollow mockeries if a person, however humble or even debased, could be unlawfully held in prison and compelled to work for another who, with full knowledge of the wrong, should wilfully take part in and benefit by it, but the wronged person should have no remedy. The State can not be sued, but the State commands no unlawful imprisonment. The individual wrong-doer may be held liable. Circumstances may aggravate or ameliorate the act. What the facts may appear to be

on the trial is not the question. This petition is not subject to general demurrer.

We do not hold that every lessee of convict labor was bound to investigate the legality of the conviction or the detention of persons put at work for him under his contract. He might fairly have assumed, until the contrary appeared, that the State's officers were acting according to law, and were only causing persons to labor who were subject thereto. But if he knew that such was not the fact, and that a person who was not a convict was being unlawfully compelled to labor for him as such, wilfully participated in the wrong, and continued to utilize such labor without objection, he could not claim to be an innocent party in the transaction. To illustrate by an extreme case: Suppose that a guard had seized some person passing along the road, who had never been convicted at all, and had put him to work as a convict, and that the defendant, with full knowledge of this fact, had wilfully continued to receive such unlawfully compelled service, for his own benefit, surely he could not escape liability on the ground that the guard had been appointed by the Prison Commission. The real question is, was there unlawful deprivation of the plaintiff's liberty and an illegal compelling of him to work for the defendant, and did the defendant become a participant in such wrong? The allegations of the petition were sufficient, as to these two points, to withstand a general demurrer. While there was also a special demurrer as to certain allegations, it was not urged before us, or referred to in the brief of counsel.

Authorities from other States furnish but little aid in this connection, owing to the difference in the acts of different legislatures respecting the control of convicts. Only a few will be mentioned. In Baltimore Boot & Shoe Mfg. Co. v. Jamar, 93 Md. 404 (49 Atl. 847, 86 Am. St. R. 428), a convict sued a contractor for damages on account of an injury resulting from the falling of an elevator. The relation existing between the contractor and the convict, in some respects analogous to that of master and servant, and in others differing therefrom, and the corresponding duties arising, were discussed. In St. Louis etc. Ry. Co. v. Boyle, 83 Ark. 302 (103 S. W. 744), the question was whether the relation of master and servant existed between a hirer of convict labor from the State, where the latter retained control of the convicts, so as to render

the former liable for the tortious acts of one of the convicts as his servant.   The court held that such liability did not exist; and that although the tortious act was committed on Sunday, when the convict was allowed pay for his labor, this did not render the hirer liable, where the State retained the right to control the acts of the convict.   In Thompson *v.* Bronk, 126 Mich. 455 (85 N. W. 1084), under a contract between the warden of the State prison and an individual, the warden was to furnish to the contractor the labor of three hundred convicts at a stated price per day; and while a convict, the plaintiff was required by the warden to work for the contractor, who paid the State the contract price.   After the plaintiff's discharge from prison, he sued the contractor and his partner, the action sounding in contract, and containing "the labor and quantum meruit counts," as stated in the opinion.   It was held that the plaintiff was not entitled to recover, because he had no contract relations, express or implied, with the defendants.   In Patterson *v.* Crawford, 12 Ind. 241, a person was convicted and sentenced by a court which had no jurisdiction, and was confined in the State prison at hard labor, until released by writ of habeas corpus.   While there he was compelled by the warden to work for a certain person.   After his release an assignee from him brought suit against the lessee to recover the value of his work, upon an implied contract.   The court held that a recovery could be had. In Greer *v.* Critz, 53 Ark. 247 (13 S. W. 764), a contract was made by a county judge, in vacation, for the hire of a convict, while the act of the legislature gave such power to the county court only. It was held, that the contract was void, and that the convict could recover of the hirer the value of his services.   While there is a difference in the views of the courts as to whether an action could be based on an implied contract under such circumstances, none of them which have come to our attention hold that a person who is unlawfully restrained of his liberty is entirely without remedy, or that if a contractor, knowing of the illegality of the detention and enforced labor, participates in the wrong done and receives a benefit from it, he is free from liability.

This disposes of the question of dismissing the case; but as it will be returned for further proceedings, we refer briefly to the contention in regard to the allowance of time for good conduct. The shortening of a sentence because of good behavior is a benefit

conferred by the State, and entirely dependent upon the statute. The Penal Code, § 1173, provides that "The superintendent of each penitentiary camp shall keep a correct register to be termed 'The good conduct account,' in which he shall faithfully record the conduct of each convict under his charge who shall demean himself uprightly," and shall, in his official report, include a statement of such conduct, "and each convict who shall demean himself uprightly and well shall have deducted, from the time for which he may have been sentenced, two months for the second year, three months for each subsequent year, until the tenth year, . . and such record shall be evidence for or against the convict in any of the courts of this State." This record was made the official means of determining whether or not there should be a reduction of the sentence. It was never contemplated that the length of the sentence and the time of its expiration should be determined by conflicting parol testimony and the opinions of witnesses. The contention of the plaintiff seems to be that because he was serving two sentences concurrently, and would therefore be entitled to his liberty upon the expiration of the longer of the two, he should have such longer term reduced by calculating good behavior under both terms; in other words, that he should have his term of imprisonment limited by the longer sentence only, but should have it reduced on the basis of both sentences. Such is not the law.

It follows from what has been said that the court correctly overruled the general demurrer to the plaintiff's petition; but erred in overruling the objections to the amendment, and allowing it. Direction is given that the judgment be modified accordingly.

*Judgment affirmed, with direction. All the Justices concur.*