33267. MELTON *v.* HELMS, guardian.

DECIDED DECEMBER 2, 1950. REHEARING DENIED DECEMBER 19, 1950.

John A. Smith, M. W. Rainey, for plaintiff in error.
James E. Short, Joseph M. Rogers, contra.

SUTTON, C. J.   Ethel Helms, as guardian of Virgil Coleman Helms, an incompetent, brought this action for damages against T. R. Melton and W. E. Gordy in Marion Superior Court.   The petition consisted of two counts, one in trover and the other for trespass on land; the trover count and W. E. Gordy as a party defendant were stricken from the petition by amendment during the trial and before the plaintiff rested her case.   The petition, as amended, alleged substantially the following:   Helms' possession and ownership of a certain described tract of land in Marion County; the wrongful entry upon said land by the defendants and the willful cutting and removal of the trees on said land by the defendants, the defendant Melton knowing that the right and title to the timber on this land was in the plaintiff when he pretended to sell the timber rights therein to W. E. Gordy, and Melton had full knowledge of his own want of right or title thereto; and thereby damaging and decreasing the market value of the described land from $5471.25 to $3000; and that the wrongful entry upon the plaintiff's land and the cutting and removal of the timber thereon were willful and malicious on the part of the defendants.   The prayer was for judgment for property damage and $10,000 punitive damages.

There was evidence to the effect that Helms, through his guardian, owned and was in possession of a tract of land lying to the north of and adjoining a tract of land owned by Thornton McMurrain.   T. R. Melton held a timber lease to McMurrain's land, which he assigned to W. E. Gordy.   The true line between these two tracts, running from east to west, was marked by a wire fence part of the way, and then by a hedgerow, consisting of dense underbrush and older trees than were in the surrounding lands.   The wire fence, at the point where it met the hedgerow, turned to the northeast into the Helms tract, and up a terraced hill that had been formerly under cultivation. Melton knew the location of the true line, but on the day he assigned the timber lease to Gordy, he went with Gordy to the land and pointed out the line to him as running northeast along the wire fence from its turning point for some 300 yards, then east across one of the terraces to the western boundary of the Helms land, and then south to the true line.   Gordy, being a stranger in that county, was ignorant of the location of the

true line, and he relied on Melton's representation as to the line to which he could cut the timber, and this caused Gordy to cut about 50,000 feet of timber from the Helms land. The evidence was conflicting, but there was evidence to the effect that the market value of the plaintiff's land had been decreased at least $2000 by the alleged trespass thereon by the defendants, and that Melton knowingly and willfully pointed out the wrong line to Gordy, thereby inducing and causing him to enter upon and cut the timber from the plaintiff's land, wrongfully.

The jury returned a verdict for Helms in the sum of $5000, and judgment was rendered accordingly. Melton moved for a new trial on the general grounds and three special grounds. To the overruling of this motion the defendant Melton excepts.

■ "In all cases he who maliciously procures an injury to be done to another, whether it is an actionable wrong or a breach of contract, is a joint wrong-doer, and may be sued either alone or jointly with the actor." Code, § 105-1207. "The word 'procure' as here used, does not require the lending of assistance in the actual perpetration of the wrong 'done by another'; but if one, acting only through advice, counsel, persuasion, or command, succeeds in procuring any person to commit an actionable wrong, the procurer becomes liable for the injury, either singly or jointly, with the actual perpetrator." *Lambert* v. *Cook,* 25 *Ga. App.* 712 (104 S. E. 509) ; *Goddard* v. *Selman,* 56 *Ga. App.* 116 (192 S. E. 257) ; s. c., 186 *Ga.* 103 (197 S. E. 250).

"One who procures or assists in the commission of a trespass is equally liable with the actual perpetrator for the damages which the owner of the property sustains thereby. As was said by the court in *Markham* v. *Brown,* 37 *Ga.* 277, 281, 'This action may be maintained, not only against the party who did the act, but against all who *direct* or *assist* in the commission of it. 2d Leigh's Nisi Prius, 1443. Thus a party may be sued in trespass in respect of his *previous consent, or request,* that the trespass may be done, as if A command or request B to beat or impress C, or to take his goods, or *to commit a trespass on his land,* and B do it, this action lies as well against A as against B. 1st Chitty's Pleading, 181. 7 Comyn's Dig. top page 515, letter C.' 'To render one man liable in trespass for the acts of others, it must appear either that they acted in concert, or that the act

of the party sought to be charged ordinarily and naturally produced the acts of the others.' *Brooks* v. *Ashburn*, 9 *Ga.* 297. It was held in Kolb *v.* Bankhead, 18 Tex. 228, that, 'Where A, professing to sell timber trees from his own land, points out to the purchaser timber trees upon the land of another, which are cut and carried off by the purchaser, A is responsible in an action for damages, in the same manner as if he had himself cut and carried off the timber.' " *Burns* v. *Horkan*, 126 *Ga.* 161, 165 (54 S. E. 946).

"In the decision cited [Burns v. Horkan, supra], a number of authorities are referred to, from which it appears to be well settled that any one who procures or assists in the commission of a trespass, or directs or requests that it be done, or does an act which ordinarily or naturally produces the trespass, is liable jointly with the actual perpetrator. See also: *Brooks* v. *Ashburn*, 9 *Ga.* 297; *Graham* v. *Dahlonega Gold Mining Co.*, 71 *Ga.* 296; *Chattahoochee Brick Co.* v. *Goings*, 135 *Ga.* 529-535 (69 S. E. 865, 22 Ann. Cas. 1912A, 263); *Williams* v. *Inman*, 1 *Ga. App.* 321 (57 S. E. 1009). In *Baker* v. *Davis*, 127 *Ga.* 649 (57 S. E. 62), it was held that if one commits trespass by wrongfully cutting the timber upon land by direction of another, both may be sued as joint wrongdoers." *Burch* v. *King*, 14 *Ga. App.* 153, 155 (80 S. E. 664).

There was evidence that Melton, who knew the location of the true line between the Helms land and the McMurrain land on which he held a timber lease, went with Gordy to the land on the day that he transferred the timber lease to him and knowingly pointed out to Gordy a line running into the Helms land as the line to which he could cut the timber, and that Gordy was a stranger in that section and did not know the location of the true line in question.

Under the evidence, the jury was authorized to find that the acts and representations of Melton in pointing out the line induced and caused Gordy to commit the trespass on the Helms land. And this is true although the lease transferred by Melton to Gordy did not purport to convey any timber on the Helms land. Under such circumstances, Melton was a joint wrongdoer with Gordy and was liable either singly or jointly with him for the trespass committed. See *Ketchum* v. *Price*, 31 *Ga. App.* 49,

51 (119 S. E. 442); also see Oswalt v. Smith, 97 Ala. 627 (12 So. 604); Castleberry v. Mack, 205 Ark. XIX (167 S. W. 2d, 489); McCloskey v. Powell, 123 Pa. 62 (16 Atl. 420); Hambright v. Walker, 211 S. C. 201 (44 S. E. 2d, 310). The verdict was authorized under the evidence and the law applicable thereto.

■ In the first special ground of the amended motion for a new trial error is assigned on the refusal of the trial judge to give in charge to the jury the following request: "I charge you that if you believe from the evidence, that if the defendant Gordy had equal opportunity and equal means of obtaining the truth, then, he could not defend as against Mrs. Helms by claiming to have been influenced by the acts and declarations of the defendant, Melton, unless he was not only ignorant of the true title, but also did not have any convenient means of acquiring knowledge. Where both parties have equal knowledge or equal means of obtaining the truth, there shall be no estoppel, as to Mrs. Helms." Since Gordy was no longer a party to the action, this charge, defining Gordy's liability, was inapplicable and was properly refused by the trial judge.

■ The defendant in the second ground of his amended motion for new trial assigns as error the refusal of the trial judge to give the following request in his charge to the jury: "I charge you further that if you believe from the evidence adduced at the trial that the deeds and surveyor were equally accessible to both the defendant Melton and the defendant Gordy, and that both defendants had an equal and convenient means of acquiring accurate information as to the true location of the land lines of the plaintiff, then it would be no defense for the defendant Gordy to claim that defendant Melton pointed out the lines to him which proved to be wrong, and this alone would not make Melton liable to the plaintiff if you believe that by the exercise of due diligence Gordy could have acquired correct information as to the true location of the line."

This request to charge is subject to the same criticism as the request set forth in the first ground of the amended motion. It attempts to define the liability of a person no longer a party to the suit, and as such, it was not adjusted to the issues in the case. It was also argumentative in favor of Melton. The portion of the charge which states that Melton would not be liable

to the plaintiff if he had only pointed out the wrong lines to Gordy, if Gordy could have acquired knowledge of the true line, is an incorrect statement of the law, under the principles set out in the first division of this opinion.

■ The defendant in the third special ground of his motion assigns error on the refusal of the court to give the following request in charge to the jury: "I charge you that when parties negotiate a contract and it is finally consummated with a written contract, everything pertaining to the contract is merged in the written contract and it becomes the highest and best evidence of the terms of the contract and oral evidence is not admissible to change the terms of the written contract, and if you believe from the evidence that the contract between Melton and Gordy was a written contract, then the written contract would speak the terms of the same."·

Although this request may be a correct statement of a principle of law, it is not applicable to the issues of this case as it finally developed. There was no attempt made by the plaintiff to show that Melton had sold to Gordy, according to the description in the timber lease, any of the timber on Helms' land. The terms of the contract between Melton and Gordy were not in dispute, nor was there any attempt to alter or vary them. The gravamen of the wrongful conduct with which Melton is charged by the plaintiff is that Melton went to the land with Gordy, knowingly pointed out the wrong line to him, and told him that he could cut the timber to that line. The principle involved in the charge was inapplicable to the issue in the case, and it was not error for the trial judge to refuse to give it.

■ The trial judge did not err in overruling the defendant's motion for a new trial.

Pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, p. 232; Code, Ann. Supp., § 24-3501), requiring that the full court consider any case in which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment affirmed. MacIntyre, P.J., Gardner, Townsend and Worrill, JJ., concur. Felton, J., dissents.*

FELTON, J., dissenting. I agree with the statement that one who does an act which ordinarily or naturally produces a tres-

pass is liable therefor whether he does the actual trespassing or not, but I do not agree that one who undertakes to sell a timber lease by transferring it is guilty of a trespass upon a third party by orally misrepresenting a boundary line when the lease contains a perfect description of the lands upon which the timber lay. The case here is the same as if the transferor of the lease had owned the land and had executed a deed or a lease in which the land involved was accurately described. The rule enunciated by the majority is the rule in cases where the transaction is accomplished by writing or conveyances which by their terms include lands or property not owned by the grantor. All apparently applicable Georgia cases are those where the description in the written conveyance includes a third person's property. The foreign cases cited are either similar to the Georgia cases or are cases where the sale is an oral sale and the rule in such cases is the same as the cases involving written instruments. In *Burch* v. *King*, 14 *Ga. App.* 153 (supra), the court said: "The execution of the conveyance amounts to an assertion of the maker's right to use the property, and is equivalent to counseling and directing the grantee or lessee to commit the trespass." That is true because when one undertakes to convey property by a writing or otherwise, the purchaser has a right to presume that he gets a good title to what is conveyed by the instrument, and his using the property or selling it is a natural and probable consequence of its being included in the written conveyance. The same applies to property orally sold and pointed out. I think the rule is different when the written conveyance does not include the property not owned by the seller for the reason that the purchaser is bound to know that he is only legally entitled to what is contained in the writing and no more, no matter what representations, statements or agreements have been made even before the execution of the instrument and his using, selling or dealing with more than is included in his written instrument is not the natural and probable consequence of the seller's fraud or misrepresentation. The buyer's knowledge of the law and his duty to abide by his conveyance insulates the seller from liabilities for injuries brought about by the buyer even if the buyer's actions are induced by the seller's misrepresentations. The buyer cannot take advantage of his own negligence and

breach of duty and a third person to whom he sells cannot do so. For the rule that the rights of parties are based solely upon the descriptions in deeds see *Taylor* v. *Board of Trustees of Glenlock Public School*, 185 *Ga.* 61 (194 S. E. 169). It seems to me that the majority ruling in this case is strongly against public policy and opens the doors to fraud and collusion.